MATTER OF SANDIN-NAVA

In Deportation Proceedings

A-17221030

*Decided by Board March 22, 1972*

Since respondent's United States citizen child, although the issue of a bigamous marriage, is a *legitimate* child under section 85 (now section 4453) of the Civil Code of California and also within the contemplation of section 101(b)(1)(A) of the Immigration and Nationality Act, respondent qualifies as a "parent" under section 101(b)(2) of the Act. Accordingly, he qualifies as a "parent" for the purpose of a section 241(f) waiver of deportability.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under section 212(a)(19), procured immigrant visa by fraud.

Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Immigrant seeking to enter the United States to perform labor without labor certification required by section 212(a)(14).

Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under section 212(a)(20), immigrant not in possession of immigrant visa.

ON BEHALF OF RESPONDENT:
Pro se

ON BEHALF OF SERVICE:
Reece B. Robertson
Trial Attorney
(Brief filed)

R. A. Vielhaber
Appellate Trial Attorney
(Brief filed)

The special inquiry officer found the respondent deportable as charged but found that he was saved from deportation by operation of section 241(f) of the Immigration and Nationality Act. From that decision the Service appeals. The appeal will be dismissed.

The record relates to a 34-year-old male, a native and citizen of Mexico. He was first married in Mexico on October 14, 1959 and five children were born of that marriage. The respondent admits that this marriage was never terminated. Nevertheless, on November 10, 1967, he went through another marriage ceremony in Mexico, this time with an alien who was lawfully admitted for

permanent residence in the United States. On the strength of this second marriage the respondent applied for and received a special immigrant visa. He entered the United States on February 3, 1968. The respondent admitted that he wilfully concealed the fact of his first marriage when he applied for his immigrant visa.

The respondent insists that he married a second time purely out of love and not for the purpose of facilitating his own immigration to the United States. In a prehearing statement the respondent said that his first wife had refused to give him a divorce because of their five children. He added that his second wife was unaware that he was not free to marry her. His second wife testified that she believed in good faith that the respondent was free to marry her. During the proceedings the respondent testified that his second marriage was one of love and affection and that he and his spouse were still living together as husband and wife. One child, a United States citizen, was born of their relationship on August 27, 1969.

The respondent admitted that at the time of his entry he was entering for the purpose of performing unskilled labor in the United States and that he did not possess or present a certification from the Secretary of Labor.

The special inquiry officer found the respondent excludable under section 212(a)(19) because his immigrant visa had been procured by fraud. He also found that since the respondent had no valid immigrant visa, he was excludable under section 212(a)(20). Since the respondent's second "marriage" was invalid he was not relieved of the labor certification requirement. The special inquiry officer accordingly found him excludable under section 212(a)(14) of the Act. Therefore the special inquiry officer found him deportable under all three charges. We agree with the special inquiry officer that deportability has been established with clear, convincing and unequivocal evidence.

The special inquiry officer held that the respondent is saved from deportation by virtue of section 241(f) of the Act. That section provides:

The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the .... parent .... of a United States citizen ....

Whether the respondent is "otherwise admissible" is not at issue. The inquiry narrows down to whether he is a "parent" for purposes of section 241(f).

The term "parent" is defined in section 101(b)(2) of the Immigra-

89

tion and Nationality Act to include a father, but only where the relationship exists by reason of any of the circumstances set forth in section 101(b)(1) of the Act. An alien, then, would qualify as a "parent" if he were the father of a child as defined under section 101(b)(1). Section 101(b)(1)(A) refers to "a legitimate child." Section 101(b)(1)(C) refers to "a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation."

The special inquiry officer held that the child was a legitimate child under section 101(b)(1)(A), despite its birth out of wedlock, by virtue of section 85 of the Civil Code of California. That section (now section 4453) then provided: "The issue of a marriage which is void or annulled or dissolved by divorce is legitimate." We note that the language contained in this section states that such issue is "legitimate" and not that such issue is "legitimated." The special inquiry officer was correct in concluding that whatever impact section 85 would have in the present case must be gauged by section 101(b)(1)(A) which concerns a "legitimate" child; rather than by section 101(b)(1)(C), which relates to children *legitimated* subsequent to their birth. The State of California also draws this distinction as there is another section of their Code (section 230), which provides a procedure whereby children may be legitimated.

The special inquiry officer relied for authority upon the case of *Godoy* v *Rosenberg,*415 F.2d 1266 (C.A. 9, 1969). In that case section 241(f) relief was afforded an alien, a parent of a United States citizen child, who had entered into a fraudulent marriage for purposes of evading the immigration laws. The child was born in the United States of the alien's illicit relationship with an unmarried woman who was a citizen of Mexico. The alien, who was married to another woman when the child was born, secured a divorce from his first wife and married the mother of his United States citizen child. The Court accepted the proposition that the subsequent marriage of his parents legitimated the child under the law of the State of California.

Not only are the facts in *Godoy* distinguishable from the facts in the present case, but the legal principles underlying the determination that the alien was a "parent" are also different. That is, in *Godoy* the alien secured a divorce from his first wife and married the mother of his illegitimate United States-born child. In the present case the respondent is still married to his first wife and is thereby unable to marry the mother of his United States-born child. Also, the court in *Godoy* held that the United States-born

child was legitimated as a result of the subsequent marriage of his parents. Legitimation under such conditions is a generally accepted legal principle which this Board has endorsed upon numerous occasions. In the present case, however, the claim of law is different; namely, that the child was "legitimate" under section 85; not that he was *legitimated* through operation of the principle endorsed in *Godoy*.

Section 85 of the Civil Code of California pertained to the "issue of a marriage which is void or annulled or dissolved by divorce. . . ." Did this section apply to the issue of a bigamous marriage? A California court has answered the question in the affirmative, *In re Filtzer's Estate*, 33 C.2d 776 (1949), and we feel bound by that court's decision in this regard.

This case involves the application of section 101(b)(1)(A) of the Immigration and Nationality Act which defines "child" for immigration purposes to include a "legitimate" child. Section 101(b)(1)(A) is silent with regard to what law shall be consulted to determine whether a child is legitimate. This is unlike section 101(b)(1)(C), dealing with the concept of a "legitimated" child, which accepts a finding of legitimation according to the law of the child's residence or domicile, or of the father's residence or domicile. Does the silence of section 101(b)(1)(A) on this point compel us to the conclusion that we may not look to the law of the child's place of residence or domicile, or to the law of the father's place of residence or domicile? We think not. After all, in the absence of any federal enactment, to what other law could we look to determine whether a child is legitimate? Since the place of residence and domicile of both the child and the father all happen to be California in the present case, we believe it was correct to follow section 85 of the Civil Code of California.

Therefore we agree with the special inquiry officer's conclusion that the respondent's United States-born child is a "legitimate" child not only in the eyes of the State of California but also within the contemplation of section 101(b)(1)(A). Since his child is deemed to be a "legitimate" child, the respondent qualifies as a "parent" under section 101(b)(2). The special inquiry officer concluded, accordingly, that the respondent qualified as a "parent" for purposes of section 241(f) as well. While we may not approve of respondent's domestic arrangements, we are mindful of the fact that in this case there is an existing family unit, including a United States citizen child. We recognize the fact that the central purpose of Congress in enacting section 241(f) was to protect the United States citizen child, even though an errant parent might thereby become the incidental beneficiary of the congressional concern.

91

Consequently, we agree with the special inquiry officer's decision granting relief under section 241(f).

The Service appeal will be dismissed and the following order will be entered.

**ORDER:** The Service appeal is dismissed.


**Warren R. Torrington, Member, Dissenting:**

I respectfully dissent.

The majority opinion's lengthy discussion of the provisions of section 85 of the Civil Code of California completely misses the real issue that is here involved.

Statutes which provide that children of void marriages are legitimate have been enacted solely in the interest of such children who, absent such statutes, would be illegitimate. They have not been enacted for the benefit of bigamists.

The respondent is an adulterer and bigamist, whose true wife and five children reside in Mexico. I consider it unreasonable to impute to Congress an intention to award permanent residence to an otherwise deportable alien as a premium for his immoral and criminal conduct. I therefore strongly object to the majority opinion's construction of sections 101(b)(1) and 241(f) of the Immigration and Nationality Act. It produces a result which appears to me to be incompatible with a sound interpretation of those statutory provisions.

The majority opinion refers to the relationship of this bigamist to the woman he wronged by inducing her to enter into a void marriage and to the unfortunate offspring as an "existing family unit." That—in my view—is preposterous.

I would sustain the Service appeal, and would reverse the special inquiry officer's decision.