Elias Castillo GODOY, Petitioner,

v.

George K. ROSENBERG, District Director, Immigration and Naturalization Service, Respondent.

No. 22432.

United States Court of Appeals
Ninth Circuit.

Aug. 29, 1969.

Manuel Rodriguez (argued), of Newman & Newman, Los Angeles, Cal., for petitioner.

Dzintra I. Janavs (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., Joseph Sureck, Regional Counsel, INS, San Pedro, Cal., John N. Mitchell, Atty. Gen. of U.S.C., Stephen M. Suffin, INS, San Francisco, Cal., for respondent.

Before CHAMBERS and KOELSCH, Circuit Judges, and WHELAN, District Judge*.

WHELAN, District Judge:

This is a petition to review an order of deportation of the Immigration and Naturalization Service and the order of the Board of Immigration Appeals denying petitioner's motion to reopen his deportation proceedings. This Court has jurisdiction under Section 106 of the Immigration and Nationality Act, Title 8, United States Code, Section 1105a.

Petitioner is an alien, a native and citizen of Mexico. He entered the United States as a special immigrant on February 5, 1966. In his application for a special immigrant visa he stated that he was married to one Ramona Luna, a citizen of the United States, on October 14, 1965, at Tecate, B. C. Mexico. Petitioner has admitted that such marriage ceremony was entered into solely for the purpose of acquiring a benefit under the Immigration laws and that he entered the

* Francis C. Whelan, United States District Judge, Los Angeles, California, sitting by designation.

United States for the purpose of performing unskilled labor in the United States.

Section 212(a) (14) of the Immigration and Nationality Act as amended, Title 8, United States Code, Section 1182 (a) (14), requires that a special immigrant who is not a parent, spouse or child of a United States citizen or of an alien lawfully admitted to the United States for permanent residence and who seeks to enter the United States for the purpose of performing skilled or unskilled labor, shall be ineligible to receive a visa and excluded from admission to the United States "unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such alien will not adversely affect the wages and working conditions of the workers in the United States similarly employed."

Petitioner was not in possession of such certification of the Secretary of Labor at the time of his entry.

The order of deportation is based upon three grounds: (1) that petitioner's visa was procured by fraud or willful misrepresentation in violation of Section 212 (a) (19) of the Immigration and Nationality Act, Title 8, U.S.C., § 1182(a) (19); (2) that he, at the time of application for admission, was not in possession of the required immigrant visa under Section 212(a) (20) of the Immigration and Nationality Act, Title 8, U.S.C., § 1182(a) (20); and (3) that he was an alien excludable at time of entry as seeking to enter for the purpose of performing skilled or unskilled labor and not in possession of the certification required by Section 212(a) (14), of the Immigration and Nationality Act, Title 8, U.S.C., § 1182(a) (14).

Petitioner claims that he is not subject to deportation because of Section 241(f) of the Immigration and Nationality Act, Title 8, U.S.C., § 1251(f), which provides: "The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

Prior to the order of deportation and on May 14, 1967, a child was born of an illicit relationship between petitioner and one Josefa Navarro Miranda in Riverside, California. Such child, Elias Castillo, Jr., was the fourth of four children born of such illicit relationship, the three oldest of such children having been born in Mexico.

■ Clearly petitioner is deportable unless the provisions of Section 241(f) of the Act afford him relief. His misrepresentations in his application for visa concerning the nature of his marriage to Ramona Luna constituted fraud; also there was no certification by the Secretary of Labor concerning the matters enumerated in Section 212(a) (14) of the Act; and his visa therefore was not valid within the meaning of Section 212(a) (20) of the Act.

■ Were there no other facts than those mentioned above, petitioner would not be entitled to any relief under the provisions of Section 241(f) of the Act inasmuch as under such facts he would not be a "parent" as defined in Section 101(b) (2) of the Immigration and Nationality Act, Title 8, U.S.C., § 1101(b) (2). The latter section refers to the relationships under which a "parent" exists as set forth in Section 101(b) (1) of the Immigration and Nationality Act, Title 8, U.S.C., § 1101(b) (1), which last mentioned section in the case of an il-

legitimate child restricts any benefit to the natural mother of such child. Petitioner, as the father only of an illegitimate child, would not be a parent within the meaning of the Act.

However, in support of his motion to reopen the deportation proceedings, petitioner has alleged certain facts found in the affidavit of his attorney wherein it is stated under oath that the attorney has in his possession documentation that the petitioner on August 8, 1967, was divorced in Juarez, Mexico, from Ramona Luna; and that on August 26, 1967, petitioner and Josefa Navarro Miranda were married at El Rosarito, B. C. Mexico. Under the laws of the State of California the fourth son of petitioner, Elias Castillo, Jr., American citizen, has thereby been legitimatized; and under the provisions of Section 101(b) (1) (C) of the Act, petitioner, if the facts set forth in the attorney's affidavit are true, is now a "parent" of such child within the meaning of the Immigration and Nationality Act.

The government contends that petitioner does not qualify for exemption from deportation under the provisions of Section 241(f) of the Act in that he was not "otherwise admissible at the time of entry." If the government is in error in its contentions, then the motion to reopen the deportation proceedings to permit petitioner the opportunity of offering proof his son, Elias Castillo, Jr., has been legitimatized should have been granted.

The government contends that petitioner was not "otherwise admissible" because of non-compliance with the requirement of Section 212(a) (14) of the Act that he did not have the required certification of the Secretary of Labor. Petitioner on the other hand contends that he was "otherwise admissible" at the time of his entry and that the failure to obtain a labor certification was intertwined with the fraudulent marriage to Ramona Luna and a part of his fraud in effecting his entry.

While there has been another decision of the Board of Immigration Appeals (Matter of Becerra, Interim Decision No. 1908, September 30, 1968) holding to the same effect as the decision of the Board here reviewed, there has been no decision from any court on the applicability of Section 241(f) of the Act to a special immigrant entering through fraud and without a labor certification. The government contends that the doctrine of Immigration & Naturalization Service v. Errico, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966), affords relief from deportation only to those aliens who are quota immigrants but who would not have been admitted because of quota restrictions had it not been for the fraud practiced by them in obtaining entry into the United States.

The government further contends that this Court's ruling in Velasquez Espinosa v. Immigration and Naturalization Service, 404 F.2d 544 (9th Cir. 1968), supports its position here. This contention is without merit. There the alien seeking relief under Section 241(f) after he had entered the United States through fraud in his application for a visa was excludable from admission into the United States under Section 212(a) (22) of the Act, 8 U.S.C., § 1182(a) (22), as an alien who had theretofore departed from the United States to avoid service in the armed forces.

*Velasquez Espinosa* is distinguishable for the reason that the alien there involved was excludable on the ground stated regardless of the fact that he was the spouse and parent of permanent resident aliens.[1]

---

1. Similarly the case of Langhammer v. Hamilton, 295 F.2d 642 (1st Cir. 1961), is distinguishable. There it was held that a member of the Communist Party, whose meaningful membership before entry was validly established could not rely on Section 241(f) to relieve him from deportation where he had fraudulently concealed such membership in his application for visa. He of course as a meaningful Communist was excludable, again regardless of whether he was parent, spouse or child of a citizen or alien admitted for permanent residence.

Petitioner on the other hand, if he had been a parent of an American citizen at the time of entry, would not have required a labor certification to validly enter as a special immigrant under Section 212(a) (14) of the Act.

The meaning of the words "otherwise admissible" as used in Section 241(f) of the Act is not obvious. Immigration & Naturalization Service v. Errico, supra, 385 U.S. at p. 218, 87 S.Ct. 473. As stated there "an interpretation of these words requires close attention to the language of § 241(f), to the language of its predecessor, § 7 of the 1957 Act, and to the legislative history of these provisions." The only specific reference in the legislative history to that part of Section 7 of the 1957 Act that deals with close relatives of United States citizens or residents is in the House Committee Report wherein it is stated that most of the persons eligible for relief would be "Mexican nationals, who, during the time when border-control operations suffered from regrettable laxity, were able to enter the United States, establish a family in this country, and were subsequently found to reside in the United States illegally." H.R.Rep. No. 1199, 85th Cong., 1st Sess., p. 11, U.S. Code Cong. & Admin.News 1957, p. 2024. The present Section 241(f) has not been changed in any way that destroys the significance of that legislative history.

■ It is difficult to see how Congress could have intended to give relief by Section 7 principally to Mexican nationals if the contention of the government here is correct because Mexicans were not then and are not now subject to quota restrictions. The statement of this Court in its opinion in Errico v. Immigration & Naturalization Service, 349 F.2d 541, 546, that the government's position in that case "would lead to the conclusion that Section 241(f) could never be operative unless the alien, while entitled to a visa of unquestionable validity,

had nevertheless fraudulently procured another upon which to base his admission" is applicable here. The government's interpretation of Section 241(f) would strip it, as far as Mexican nationals are concerned of substantial meaning and purpose. Cf. Errico v. Immigration & Naturalization Service, supra, at p. 546.

The holding in Scott v. Immigration & Naturalization Service, decided jointly by the Supreme Court with Immigration & Naturalization Service v. Errico, supra, would seem to support petitioner here. Scott entered into the country as a non-quota immigrant by virtue of a proxy marriage with a United States citizen with whom she had never lived and with whom she never intended to live. Her subsequent birth to an illegitimate child in the United States gave her relief under Section 241(f), it was held, from deportation. It would indeed seem contrary to the legislative history to hold that a Mexican national who obtained a non-quota visa [2] through fraud by misrepresenting marital status would not be entitled to be held "otherwise admissible" while Scott, although she would not have been admitted as a non-quota immigrant but for her fraud as to marital status, is held "otherwise admissible."

The Board of Immigration Appeals in the Matter of Eng, Interim Decision No. 1897, August 23, 1968, states at page 4 of its opinion that "Immigration restrictions fall into two categories: (1) those which put a limit on the number of aliens who shall enter (numerical or quantitative) and (2) those which seek to provide that only the morally, mentally, and physically fit shall enter (qualitative). Numerical control of entering aliens is achieved through the requirement that an immigrant have a visa to enter. * * * Qualitative restrictions provide that no undesirable alien shall receive a visa or be admitted. Undesirable aliens are those physically, mentally or morally

---

2. At the time Scott entered the country a Mexican national was defined as a non-quota immigrant; by amendment of the Act in 1965 he is now defined as a special immigrant.

disqualified; the subversives; and the violators of criminal, immigration, or narcotics laws (S.Rep. No. 1515, 81st Cong., 2d Sess. 66–71 (1950); Besterman, Commentary on Immigration and Naturalization Act, 8 U.S.C.A. pp. 18–34, 51–54 (1953)."

By such definition petitioner, if he in fact is the father of a legitimatized United States citizen, is not excludable on a qualitative basis. Analogously, it would also seem that the restriction on the right of special immigrants to enter into this country has a quantitative aspect. The right of a special immigrant to enter the country if he is not a parent, child, or spouse of an American citizen or of an alien lawfully admitted to the United States for permanent residence, is limited by the factual situation as to whether or not there are not sufficient workers in the United States at the place to which the alien is destined to perform skilled or unskilled labor who are able, willing, qualified and available at the time of the alien's application for visa and admission and by whether or not the employment of such alien will adversely affect wages and working conditions of workers in the United States similarly employed. The effect of requiring the labor certification from a special immigrant is to restrict the number of special immigrants who may enter.

In Immigration & Naturalization Service v. Errico the Supreme Court stated at p. 215 of the opinion, 385 U.S., p. 475 of 87 S.Ct. "the issue is whether the statute [Section 241(f)] saves from deportation an alien who misrepresents his status for the purpose of evading quota restrictions." Here the issue is whether the Section 241(f) saves from deportation an alien who misrepresents his status for the purpose of evading special immigrant restrictions. The Supreme Court in the case just cited further stated at pp. 217–218, 87 S.Ct. at p. 476, "It requires a considerable stretch of the imagination to conceive of an alien making a material representation that did not conceal some factor that would make him inadmissible."

[redacted] In construing the statute the doubt should be construed in favor of the alien. Immigration & Naturalization Service v. Errico, *supra*, at p. 225, 87 S.Ct. 473. "The legislative history of the Immigration and Nationality Act clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States citizens and immigrants united." H.R.Rep. No. 1199, 85th Cong., 1st Sess., p. 7 (1957), U.S. Code Cong. & Admin. News 1957, p. 2020.

[redacted] In the light of this humanitarian purpose and the meaning of Section 241 (f) it is concluded that if petitioner can prove that he is a parent of a legitimatized child who is a citizen of the United States he is saved from deportation by Section 241(f) of the Act.

The case is therefore remanded to the Board of Immigration Appeals for such determination and the Order denying the motion to reopen is reversed.