Enriqueta Reginalda GONZALEZ de MORENO, Petitioner,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 73–1826.

United States Court of Appeals, Fifth Circuit.

April 10, 1974.

Albert Armendariz, Sr., El Paso, Tex., for petitioner.

Troy A. Adams, Jr., Dist. Director, Immig. & Nat., New Orleans, La., Elliott L. Richardson, Atty. Gen., U. S. Dept. of Justice, John L. Murphy, Chief, Gov. Regulations Sec., Dept. of Justice, Crim. Div., Washington, D. C., William S. Sessions, U. S. Atty., San Antonio, Tex., Robert P. Trout, Atty., Washington, D. C., Ralph Harris, Asst. U. S. Atty., El

**534**

Paso, Tex., William E. Weinert, Dist. Director, U. S. Immigration & Nat. Service, El Paso, Tex., for respondent.

Before THORNBERRY, GOLDBERG and INGRAHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

Petitioner, Mrs. Enriqueta Reginalda Gonzalez de Moreno, seeks review of a final deportation order of the Board of Immigration Appeals entered against her under the provisions of 8 U.S.C. § 1252(b). Our jurisdiction rests on 8 U.S.C. § 1105a.

Petitioner, a forty-one year old Mexican national, has been a resident of the United States for approximately twenty years. The Immigration and Naturalization Service instituted these proceedings in 1972, seeking petitioner's expulsion from this country in accordance with section 241(a)(1) of the Immigration and Nationality Act ("the Act") [1] as an immigrant alien who at the time of entry did not possess a valid visa or recognized substitute document. Petitioner did not deny these charges either before the special inquiry officer or on appeal to the Board, but rather asserted that she qualified for relief from deportation under sections 241(f)[2], 244(a)(1)[3], and 249[4] of the Act. Both the inquiry officer and the Board found petitioner ineligible for relief under any of the specified provisions. We affirm the administrative determination that sections 244(a)(1) and 249 provide petitioner no refuge. The arguments presented to this Court in opposition to that holding are without merit.[5]

1. 8 U.S.C. § 1251(a)(1) (1970).

2. 8 U.S.C. § 1251(f) (1970).

3. 8 U.S.C. § 1254(a)(1) (1970):
"[T]he Attorney General may, in his discretion, suspend deportation and adjust the status of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—
(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. . . ."

4. 8 U.S.C. § 1259 (1970):
A record of lawful admission for permanent residence may, in the discretion of the Attorney General and under such regulations as he may prescribe, be made in the case of any alien, as of the date of the approval of his application or, if entry occurred prior to July 1, 1924, as of the date of such entry, if no such record is otherwise available and such alien shall satisfy the Attorney General that he is not inadmissable under section 1182(a) of this title insofar as it relates to criminals, procurers and other immoral persons, subversives, violators of the narcotic laws or smugglers of aliens, and he establishes that he—
(a) entered the United States prior to June 30, 1948;
(b) has had his ersidence in the United States continuously since such entry;
(c) is a person of good moral character; and
(d) is not ineligible to citizenship.

5. The opinion of the special inquiry officer, adopted by the Board, held that petitioner could not receive the record of lawful admission provided by section 249 because she "has not satisfactorily borne the burden of establishing that she entered the United States prior to June 30, 1948, and that she has had her residence in this country continuously since such entry." Petitioner's own allegations concerning her date of entry changed on several occasions during the course of the administrative proceedings; and documentary evidence introduced at the hearing, including an affidavit executed by petitioner in 1970, indicated that she had resided in Mexico as late as 1951. In light of this record, it can hardly be argued that petitioner has fulfilled the statutory requirement of *establishing* continuous residence from June 30, 1948.
Petitioner, as a native of a country contiguous to the United States, is excluded from the coverage of section 244(a)(1), and can receive such discretionary suspension of deportation pursuant to section 244(f)(3) [8 U.S.C. § 1254(f)(3)] only upon a showing "that [s]he is ineligible to obtain a nonquota immigrant visa." No satisfactory showing of ineligibility was made below; and petitioner

However, finding that the relief mandated by section 241(f) was denied on the basis of an incorrect interpretation of the statute, we reverse the order of the Immigration and Naturalization Board and remand this cause for the exercise of a properly informed administrative judgment.

Section 241(f) provides that:

"The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

The Service does not dispute that petitioner fulfills many of the statute's prerequisites for relief from deportation. Petitioner's spouse and five of her children are American citizens. She gained entry to this country by innocently misrepresenting herself as an American citizen [6], and the present deportation proceeding "results directly from the misrepresentation." Immigration and Naturalization Service v. Errico, 1966, 385 U.S. 214, 217, 87 S.Ct. 473, 476, 17 L.Ed.2d 318.[7]

---

seeks to circumvent that requirement by attacking the constitutionality of distinctions on the basis of national origin. It is clear, however, that Congress may tailor immigration procedures to meet the problems posed by the exceptional volume or nature of the immigrants from particular countries. *Cf.* Faustino v. Immigration and Naturalization Service, 2 Cir. 1970, 432 F.2d 429, cert. denied, 1971, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824. The special treatment afforded nationals of contiguous countries in section 244 of the Act is an acceptable congressional judgment that could justifiably flow from the number of Canadian and Mexican nationals entering the United States, the ease of such entry, and the relative availability of visas.

6. The special inquiry officer of the Service based his denial of 241(f) relief largely on the innocent nature of petitioner's assertion of citizenship. Petitioner's father had told her that she was a citizen of the United States and he had supported this claim with documents belonging to her dead sister. Mrs. de Moreno did not doubt the truthfulness of her father's statements at the time she related them to U.S. Immigration officials.

The notion that 241(f) should be interpreted as an expression of Congressional solicitude only for culpable aliens, to the exclusion of the misinformed, was eloquently denounced by Judge Frankel in Matter of Yuen Lan Hom, 289 F.Supp. 204, 205–206 (S.D.N.Y.1968):

"There was a time when judges tended to view legislators as insensitive intruders marring the beauty and symmetry of the law. It may have been possible in that age for courts to conclude solemnly that the people's elected representatives had contrived deliberate rules of law which could not fail to outrage anyone with a claim to intelligence or ordinary decency. It was also an age, after all, when at least some judges saw it as evidence of the Law's mysterious splendors when they deemed themselves bound rigidly by judge-made rules which were shocking to everyone and professedly repulsive to the judges themselves. The times are not improved in all respects, but we have mostly lived past that sort of thing.

"So let it be acknowledged that it would take some powerful showing of underlying sense and purpose to justify the gross surface anomaly the Service proposes. Far from supplying such an unlikely demonstration, the pertinent materials quite clearly compel rejection of the Service's position." [citations omitted]

The Board of Immigration Appeals has acquiesced in the determination that 241(f) covers both innocent and fraudulent misstatements, *see* Matter of Lim, 13 I & N Dec 169; and at oral argument the Government abandoned any reliance on this aspect of the opinion below.

7. "Literally, § 241(f) applies only when the alien is charged with entering in violation of § 212(a)(19) of the statute, which excludes from entry '[a]ny alien who . . . has procured a visa or other documentation . . . by fraud, or by wilfully misrepresenting a material fact.' Under this interpretation, an alien who entered by fraud could be deported for having entered with a defective visa or for other documentary irregularities [as in the case of petitioner de Moreno] even if he would have been admissible if he had not committed the fraud. The Government concedes that such an interpretation would be inconsistent with the manifest purpose of the section, and the

**536**

The sole objection to the application of § 241(f) in this case arises from the Government's argument that in order to be found otherwise admissible at the time of entry an alien must have submitted to the system for processing immigrants. Since those who gain admission to the United States in Mrs. de Moreno's fashion, through the false assertion of citizenship, are never subjected to this screening procedure, they are necessarily excluded from coverage. Though the argument was not made in the administrative proceeding or in its brief to this Court, at oral argument the Government did attempt to justify the distinction between false visa claims and false claims of citizenship. Counsel contended that § 241(f) relief should be denied to aliens who entered under claims of citizenship in order to protect the Government's legitimate interest in the integrity of the immigration system. The Immigration and Naturalization Service is evidently of the opinion that there is a significantly greater chance of detecting qualitatively ineligible aliens even in the process of a fraudulent immigration proceeding than by means of a subsequent § 241(f) investigation. The Service contends that, since it is virtually impossible to determine whether aliens who entered under claims of citizenship were qualitatively admissible at time of entry, that requirement can have meaning only if such aliens are read out of the statute. A panel of the Second Circuit, over the dissent of Judge Mulligan, found this position persuasive. *See* Reid v. Immigration and Naturalization Service, 2 Cir. 1974, 492 F.2d 251 [1974]. However, when the identical argument was pressed by the Government with great vigor before the

Ninth Circuit in Lee Fook Chuey v. Immigration and Naturalization Service, 9 Cir. 1971, 439 F.2d 244, it was rejected. We concur in that rejection, finding the Government's position to be without support in the language or logic of the statute.

By its terms § 241(f) provides relief for those who obtain visas, other documentation, *or* entry by means of fraud or misrepresentation. The use of the disjunctive indicates that the section was intended to apply to aliens who had no need to lie or misrepresent in the course of obtaining a visa, but whose actual entry into this country hinged on a misstatement of fact—whether intentional or innocent. One such class of aliens would be those falsely representing themselves as American citizens. Indeed, given the requirement of a visa or recognized substitute document for the entry of nationals of most foreign countries and the improbability that one who had honestly obtained a visa would have reason to lie upon presenting his documentation at the border, the most logical application of the separate "fraudulent entry" provision is to precisely those aliens in petitioner's position—those who entered under a claim of citizenship.

The interpretation proferred by the Government is not only contrary to the plain meaning of the words used by Congress, it is also without support in the legislative history of the statute. We have neither found nor have we been directed to any committee reports or congressional statements indicating an intent to limit the embrace of this statute to visa-bearing aliens. Indeed, the evidence available from those sources points with some force in the opposite direction.[8] But even were the weight of

administrative authorities have consistently held that § 241(f) waives any deportation charge that results directly from the misrepresentation regardless of the section of the statute under which the charge was brought, provided that the alien was 'otherwise admissible at the time of entry.'" [citations omitted]
Immigration and Naturalization Service v. Errico, 1966, 385 U.S. 214, 217, 87 S.Ct. 473,

476, 17 L.Ed.2d 318. *See also* Muslemi v. Immigration and Naturalization Service, 9 Cir. 1969, 408 F.2d 1196.

8. In 1961 Senator Eastland, Chairman of the Senate Judiciary Committee, remarked in reference to § 241(f) and similar ameliorative provisions of the Act that:
   "Those provisions relate to the waiver of grounds of inadmissibility and deportability

congressional comment sufficient to create uncertainty as to the proper reading of this statute, the Government's position would nevertheless fall to the interpretive canons announced by the Supreme Court in Immigration and Naturalization Service v. Errico, supra. For in that opinion the Court, while noting that "the meaning of the words 'otherwise admissible' [in § 241(f)] is not obvious,"[9] instructed that "if there [be] some doubt as to the correct construction of the statute, the doubt should be resolved in favor of the alien."[10] In this case the Government has first attempted to create doubt where the statute speaks with seeming clarity, and has then urged us to resolve that doubt *against* the alien. This Court is bound, however, by the language of the Congress and the decisions of the Supreme Court. We have no warrant under *Errico* to apply bizarre techniques of interpretation to restrict the scope of § 241(f).

Finally, it should be noted that even when the specific language, legislative history, and proper method of interpreting the statute are ignored, the Government's position prevents a logical defense. Section 241(f) was designed to provide relief to those who have evaded the full rigor of the immigration process by their misrepresentations. The basic assumption of the provision is that the alien has rendered himself liable to deportation by this circumvention of the system. No one disputes, for example, that the statute covers the case of an alien who has obtained a visa by materially misrepresenting his status, even to the point of falsifying his identity and country of origin. If § 241(f) holds an alien "otherwise admissible" who has made a mockery of the immigration interview by his distortion of reality, we see no justification for denying the protection of that section to an alien who has taken the small additional step of entirely avoiding the procedure by asserting American citizenship. Lies concerning identity, occupation, and country of origin may well render the initial immigration investigation either as worthless as no investigation at all, or as difficult and fruitless as a later § 241(f) inquiry. More importantly, the Government's argument overlooks the fact that § 241(f) was not intended to shore up the integrity of the immigration process, but rather was designed as an instrument of humanitarian relief to be applied once the wall has been breached.

> "Almost invariably, by the time that the relief provision of 241(f) is invoked, the integrity of the immigrant visa system has been long violated. Section 241(f) deals with the problem after the breach has occurred. When Congress enacted this provision, it was reconciling strong and conflicting policies. Congress was dealing with problems arising from violations of the visa system, and had to do so in the context of ongoing family ties and expectations which had developed for many years after the breach. Without placing blame, we believe Section 241(f) as we have interpreted it, is the result of the ineffective enforcement of immigration laws, not the cause of it."

Lee Fook Chuey, supra, at 250 of 439 F.2d.

in the cases of certain close relatives of U.S. citizens and lawful permanent residents involving conviction of minor criminal offenses, fraudulent misrepresentations in connection with applications for visas *or admission* to the United States." [emphasis added]
107 Cong.Rec. 19653–54.
In his able dissent in *Reid* Judge Mulligan noted that "there is language in the legislative history . . . indicating that the principal beneficiaries of the law were Mexican nationals who were able to avoid border restrictions. If the Congress had in mind the so-called 'wet back' entrants, then it is difficult to comprehend that it intended only visa-carrying entrants." 492 F.2d at 263. *See also* H.R. Report No. 1199, 85th Cong. 1st Session, p. 11.

9. 385 U.S. at 218.

10. 385 U.S. at 225. *Errico* held that an alien would be otherwise admissible within the meaning of the statute even if he should have been excluded at the time of entry under the applicable quota restrictions.

538

■■ Section 241(f) is not primarily designed to provide a retroactive enforcement mechanism. It is a benevolent statute. Mercy and compassion are inherent in its ameliorative function; and we are convinced that Congress did not intend for the courts to be niggardly in their interpretation of its language. If the term "otherwise admissible" is to have meaning within the context of the statute it must be interpreted as requiring that an alien meet only the physical, mental, and moral standards for admission to this country set out in 8 U.S.C. § 1182. Because of the erroneous view of the law adopted below no administrative judgment has been made on petitioner's *qualitative* acceptability at the time of entry. It is therefore appropriate to remand this cause for such a determination.

The Order is reversed; and the cause is remanded to the Board of Immigration Appeals.