Ramon CERVANTES et al.,
Petitioners-Appellants,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, DEPARTMENT OF
JUSTICE and William Saxbe, Attor-
ney General, United States of Ameri-
ca, Respondents-Appellees.

No. 74–1263.

United States Court of Appeals,
Tenth Circuit.

Jan. 21, 1975.

Donn J. Everett, Manhattan, Kan., for petitioners-appellants.

John L. Murphy, Chief, Government Regulations Section, Crim. Div., Robert E. Courtney, III, Atty., Dept. of Justice, Washington, D. C., for respondents-appellees.

Before LEWIS, Chief Judge, and HILL and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

This case arises out of a petition to review an order of the Board of Immigration Appeals (Board) dismissing an appeal from a Special Inquiry Officer's order.

Petitioner Ramon Cervantes entered this country on or about August 25, 1970, at El Paso, Texas. Ramon, entering as a visitor for pleasure, was authorized to remain in the United States for a period not exceeding six months. Ramon came to Manhattan, Kansas, and began working at a steel and pipe supply company, without permission of the Immigration and Naturalization Service (Service). Petitioner Luvia Ocana Ochoa (Cervantes after marriage) entered the United States near El Paso, on or about October 27, 1970, without presenting herself for inspection or being inspected by a United States Immigration Officer. Ramon's and Ocana's minor daughter,

Alejandra, accompanied Ocana. They went to Manhattan where Ramon and Ocana resumed living together and held themselves out as husband and wife. On February 17, 1971, a child, Joe Alfred Cervantes, was born to the couple. On April 5, 1971, Ramon and Ocana were formally married.[1]

On September 27, 1973, the Service agreed not to institute deportation proceedings against Ramon if he would voluntarily depart the United States on or before October 27, 1973. An extension was granted until December 1, 1973. Ramon did not leave by that date; on January 30, 1974, he and Ocana were served with Orders to Show Cause why they should not be deported and with Notices of Hearing.

On March 18, 1974, a hearing was held before a special inquiry officer to determine whether Ramon and Ocana should be deported. Petitioners' counsel conceded deportability but introduced affidavits "[f]or the purpose of establishing a record for a later appeal." The affidavits and a birth certificate establish the birth of Joe Alfred Cervantes. At the hearing's conclusion, the officer issued an order finding Ramon and Ocana deportable but granting them a voluntary departure on or before April 18, 1974. If they did not depart voluntarily, a deportation order would be effective immediately. Neither Alejandra nor Joe Alfred was ordered deported.

A Notice of Appeal to the Board was filed on March 18, 1974. The grounds of appeal were as follows:

> That immigrants are saved from deportation by reason of the facts set forth in the two affidavits received into evidence and pursuant to the provisions of the United States Code Annotated 8–1251(f) [which provides:]

> "The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

On April 30, 1974, the Board, relying on Cabuco-Flores v. Immigration & Naturalization Serv., 477 F.2d 108 (9th Cir. 1973), cert. den'd, 414 U.S. 841, 94 S.Ct. 98, 38 L.Ed.2d 78; Monarrez-Monarrez v. Immigration & Naturalization Serv., 472 F.2d 119 (9th Cir. 1972), dismissed the appeal.

Petitioners challenge the Board's determination on two grounds: (1) 8 U.S.C. § 1251(f) prevents Ramon's and Ocana's deportation, and (2) the deportation order contravenes Joe Alfred's rights under the Ninth Amendment to the United States Constitution.

On appeal to the Board, petitioners relied on Godoy v. Rosenberg, 415 F.2d 1266 (9th Cir. 1969), to support the application of § 1251(f) to this case. In *Godoy,* the alien had stated in his application for a special immigrant visa that he was married to a United States citizen; the marriage had been entered into solely to acquire a benefit under the immigration laws. In those circumstances, the court said § 1251(f) would prevent deportation if petitioner could prove he was the parent of a legitimatized child who was a United States citizen. We are not faced with an identical situation.

■ Rather, the reasoning expressed in Preux v. Immigration & Naturalization Serv., 484 F.2d 396, 397 (10th Cir. 1973), cert. den'd, 415 U.S. 916, 94 S.Ct. 1413, 39 L.Ed.2d 470 (1974), applies to this case.

[T]he provisions of 8 U.S.C. § 1251(f) may operate as a waiver of a deportation charge if, and only if, the depor-

---

1. Petitioners' brief asserts Ramon and Ocana were lawfully married when they established residency as husband and wife because of Kansas' recognition of common law marriage. The issue of marriage and legitimacy of the child are not essential to our determination.

tation charge "results directly from the misrepresentation."

In Robles v. Immigration & Naturalization Serv., 485 F.2d 100 (10th Cir. 1973), § 1251(f) was held not to prevent deportation of a person staying beyond the period of her one-month visitor's visa; the grounds for deportation were not related to any alleged antecedent fraud. Ramon is to be deported pursuant to 8 U.S.C. § 1251(a)(9) for failure to comply with the conditions of his nonimmigrant status. Ocana is to be deported pursuant to 8 U.S.C. § 1251(a)(2)[2] for entering the United States without inspection. We agree with the Board that in view of these charges Ramon and Ocana cannot receive any benefit from § 1251(f). Robles v. Immigration & Naturalization Serv., *supra*; Preux v. Immigration & Naturalization Serv., *supra*; Cabuco-Flores v. Immigration & Naturalization Serv., *supra*; Monarrez-Monarrez v. Immigration & Naturalization Serv., *supra*.

▮▮ Petitioners devote their brief to the second argument; they contend the Ninth Amendment gives Joe Alfred, a United States citizen, a right to continue to have the love and affection of his parents in the United States. The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." Petitioners believe their interpretation of the Ninth Amendment is supported by the Supreme Court cases of Griswold v. Connecticut, 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring), and Roe v. Wade, 410 U.S. 113, 95 S.Ct. 705, 35 L.Ed.2d 147 (1973).

Although we have found no mention of this constitutional argument in the prior proceedings, we consider it because a constitutional issue is involved and because of the outcome we reach. Pilapil v. Immigration & Naturalization Serv., 424 F.2d 6 (10th Cir. 1970), cert. den'd 400 U.S. 908, 91 S.Ct. 152, 27 L.Ed.2d 147.

The only novelty in petitioners' constitutional claim is its foundation, the Ninth Amendment. Courts have rejected similar claims based upon other constitutional provisions. Robles v. Immigration & Naturalization Serv., *supra*; Faustino v. Immigration & Naturalization Serv., 432 F.2d 429 (2d Cir. 1970), cert. den'd, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971); Perdido v. Immigration & Naturalization Serv., 420 F.2d 1179 (5th Cir. 1969); Mendez v. Major, 340 F.2d 128 (8th Cir. 1965). The petitioner in *Robles* relied on the Fifth Amendment claiming the deportation would be unconstitutional because a family would be divided and her children would be deprived of their constitutional right to the family unit's continuation. This Court rejected that argument and said:

> In *Silverman*[3] and *Perdido*,[4] consideration was given to the incidental impact of immigration and naturalization laws on the marriage status and on the family unit where there be minor children involved, and in each case it was concluded that such incidental impact is not in and of itself significant and does not raise constitutional problems.[5]

The deportations involved herein cause only an "incidental impact" on the minor

**2.** 8 U.S.C. § 1251(a) provides in pertinent part:

(a) Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who—

    .     .     .     .

(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States;

    .     .     .     .

(9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status

in which he was admitted or to which it was changed pursuant to section 1258 of this title, or to comply with the conditions of any such status;

    .     .     .     .

**3.** Silverman v. Rogers, 437 F.2d 102 (1st Cir. 1970), cert. den'd, 402 U.S. 983, 91 S.Ct. 1667, 29 L.Ed.2d 149 (1971).

**4.** Perdido v. Immigration & Naturalization Serv., 420 F.2d 1179 (5th Cir. 1969).

**5.** Robles v. Immigration & Naturalization Serv., 485 F.2d 100, 102 (10th Cir. 1973).

child, albeit a serious one. We cannot agree with petitioners that the Ninth Amendment as interpreted in a concurring opinion of *Griswold* and in *Roe* compels a different result than we reached in *Robles.* Congress clearly has the " . . . power to prescribe conditions under which aliens may enter and remain in the United States . . . even though their enforcement may impose hardship upon the aliens' children . . .." Application of Amoury, 307 F.Supp. 213 (S.D.N.Y.1969). The incidental impact on aliens' minor children caused by the enforcement of duly-enacted conditions on aliens' entrance and residence does not create constitutional problems.

Order affirmed.