**Ying Suet CHOW, aka Monica Chow, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 80–7010.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted December 9, 1980.

Decided April 20, 1981.

Eric A. Fisher (argued), Washington, D.C., for respondent; Joseph F. Ciolino, Atty., Dept. of Justice, Washington, D.C., on brief.

Before CHOY, ANDERSON, and SCHROEDER, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Chow petitions for review of a decision of the Board of Immigration Appeals finding her to be deportable as a non-preference immigrant who failed to obtain a labor certification from the Secretary of Labor, as required by § 212(a)(14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(14). We remand for further findings.

Chow, a native and citizen of Hong Kong, entered the United States in 1975 on the basis of her representation that she was married to Tony Ying, a lawful permanent resident alien. The spouse of a permanent resident alien is entitled to a second preference visa classification under § 203(a)(2) of the Act, 8 U.S.C. § 1153(a)(2). As Chow later conceded and does not dispute here, her marriage to Ying was a sham entered into for the sole purpose of gaining admission to the United States. She subsequently divorced Ying and married her present husband, Samson Chow, also a native of Hong Kong and present in the United States on a student visa. She apparently came to this country with the intent of marrying Samson Chow, or at least to join him.

The U. S. Immigration and Naturalization Service ("the Service") issued an Order to Show Cause on March 3, 1978, charging Chow with deportability as an alien who had entered the United States on the basis of a visa procured by fraud, and therefore excludable at time of entry under § 212(a) or the Act, 8 U.S.C. § 1182(a)(19). At

Richard D. Steel, Wasserman, Orlow, Ginsberg & Rubin, Philadelphia, Pa., for petitioner.

Chow's deportation hearing on June 2, 1978, she conceded deportability on the basis of fraud, but raised as a defense the imminent birth of her child, an event which would qualify her as the parent of a United States citizen, a complete defense under § 241(f) of the Act, 8 U.S.C. § 1251(f), to a charge of entry in violation of § 212(a)(19) for an alien who is "otherwise admissible." At the hearing, the service lodged an additional charge of deportability under § 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1), as an alien excludable at time of entry for failure to obtain a labor certification under § 212(a)(14), 8 U.S.C. § 1182(a)(14).

The Service introduced various exhibits at the hearing. The evidence tended to establish a number of facts. Chow admittedly entered into the marriage with Ying for the sole purpose of gaining admission to the United States. At the time she entered, Chow had approximately $708 deposited in an account in a Vancouver, B.C. bank. While she did go first to Ying's residence after arriving in the United States, Chow spent little time there and almost immediately moved into Samson Chow's residence. Sometime in February, 1976, approximately eight months after entering the United States, Chow took employment as a waitress. Chow elected to remain silent at the hearing. After the birth of her child, her attorney offered the child's birth certificate and moved to reopen the proceedings for the purpose of establishing a § 241(f) defense.

The administrative law judge found Chow to be deportable under § 212(a)(14) because of her failure to obtain a labor certification. The judge found that Chow was not exempt from the labor certification requirement, and further ruled that § 241(f) relief is not available to forgive deportability on a charge arising under § 212(a)(14).

The Board of Immigration Appeals affirmed. The basis of the Board's decision is unclear. While the Board held that deportability had been established because of Chow's failure to obtain labor certification,

it further held that because she was excludable under § 212(a)(14), she was not "otherwise admissible" within the meaning of § 241(f) and, therefore, was ineligible for relief under that section. Whether her ineligibility for relief under § 241(f) served to revive the fraudulent visa procurement charge under § 212(a)(19) as an additional ground of deportability independent of the labor certification charge was not made explicit by the Board's opinion.

In petitioning this court for review of the Board's order, Chow argues that the Service did not carry its burden of proving deportability by clear, convincing, and unequivocal evidence, and that the Board improperly treated her as a non-preference immigrant. She also attempts to persuade us to overrule our holding in *Cacho v. Immigration and Naturalization Service*, 547 F.2d 1057 (9th Cir. 1976), that § 241(f) is not available as a defense against a charge of failure to obtain a labor certification.

The Service argues that it carried its burden of proving Chow's deportability by clear and convincing evidence, and urges us to follow our ruling in *Cacho*. At oral argument, the Service raised the issue whether Chow had carried her burden of proving that she was "otherwise admissible" under § 241(f).

We concur with the Service's assessment that the outcome of this appeal will turn largely upon the question of whether Chow was "otherwise admissible," though we would have appreciated the benefit of the Service's thinking on the subtle complexities of the phrase, had such thinking been offered. We begin our analysis, as we must, with the wording of the statute:

"The provisions of [Section 241] relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at

time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

Section 241(f), Immigration and Nationality Act, 8 U.S.C. § 1251(f).

Section 241 generally prescribes the conditions under which an alien may be deported. Under § 241(a)(1), an alien is deportable if at the time of entry he or she was within one of the classes of aliens excludable under the Act. Section 212 of the Act, 8 U.S.C. § 1182, lists 31 classes of aliens excludable at entry. § 212(a)(19), 8 U.S.C. § 1182(a)(19), renders excludable any alien "who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact; . . ." § 212(a)(14), 8 U.S.C. § 1182(a)(14), the labor certification requirement, makes excludable:

"Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. . . ."

The Supreme Court, relying in the main upon the language of the Act, has held that the § 241(f) "forgiveness" provision excuses only fraud committed under § 212(a)(19). *Reid v. Immigration and Naturalization Service*, 420 U.S. 619, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975). In *Cacho, supra*, we interpreted *Reid* to preclude the applicability of § 241(f) to a charge of deportability based upon failure to comply with the labor certification requirement of § 212(a)(14).

We have been joined by other circuits in our understanding of *Reid* regarding § 212(a)(14). *See Skelly v. Immigration and Naturalization Service*, 630 F.2d 1375 (10th Cir. 1980); *Cobian-Hernandez v. Immigration and Naturalization Service*, 587 F.2d 872 (7th Cir. 1978); *David v. Immigration and Naturalization Service*, 578 F.2d 1373 (3d Cir.), *cert. denied*, 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978). Even were we empowered as a panel to overrule *Cacho*, no persuasive reason for rescinding that decision is apparent.

On this appeal, the Service appears to argue not only that Chow is ineligible for § 241(f) relief as against the § 212(a)(14) labor certification charge, but also that she is ineligible to assert the defense under § 212(a)(19) on the ground that she was not "otherwise admissible" at time of entry because she had not complied with the labor certification requirement. The difference is significant. If the Service is required to prove Chow's failure to comply with § 212(a)(14) as a separate charge of deportability, then it must carry its burden of proof under the "clear, convincing, and unequivocal" standard established by *Woodby v. Immigration and Naturalization Service*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). On the other hand, if Chow's alleged failure to obtain a labor certification is regarded as an event which renders her "otherwise [in]admissible" under § 241(f), then the burden of proving compliance or exemption will fall upon Chow. In deportation proceedings, the alien bears the burden of proving eligibility for relief under § 241(f) by showing that he or she would have been "otherwise admissible" except for the fraud or misrepresentation perpetrated by the alien's entry. *Cortez-Flores v. Immigration and Naturalization Service*, 500 F.2d 178 (5th Cir. 1974). If Chow fails to carry her burden of proving admissibility under § 241(f), then the separate charge of deportability under § 212(a)(14) is rendered, in effect, superfluous because the familial relationship defense will be vitiated, and

her admitted fraud at time of entry will by itself be sufficient to justify deportation.

■ The pivotal issue on this appeal thus boils down to one question: does a failure to comply with § 212(a)(14) remove an alien from the "otherwise admissible" category under § 241(f)? Our focus, under the terms of the statute, is on the alien's status "at the time of entry." We note initially that Chow's admitted fraud in procuring her visa demonstrates that she was ineligible for second preference immigrant status at time of entry. Had she truthfully reported her status, Chow would have been classified as a non-preference immigrant under § 203(a)(8), 8 U.S.C. § 1153(a)(8), a classification to which § 212(a)(14) applies by its express terms. At least for the purposes of determining eligibility for § 241(f) relief, we reject Chow's suggestion that it is improper to view her as a non-preference immigrant. The language of the Act compels us to analyze her status as of "time of entry."

The seminal decision on construction of the term "otherwise admissible" is *Immigration and Naturalization Service v. Errico*, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966). In *Errico*, the Court was asked to consider whether a failure to comply with quota restrictions would cause an alien to run afoul of the "otherwise admissible" language. The Court began its analysis by noting that the meaning of the phrase is not obvious. 385 U.S. at 218, 87 S.Ct. at 476. It then proceeded to review the legislative history of § 241(f), and concluded that Congress did not intend that an alien whose fraudulent entry was in excess of quota restrictions would be ineligible for relief on that basis alone. The Court based its assessment of Congressional intent largely upon a predecessor statute enacted in 1957. Pub.L. 85–316, 71 Stat. 639 (1957). Under the 1957 Act, fraud in the procurement of a visa was waived for an alien "otherwise admissible" at time or entry who was either (A) "the spouse, parent, or a child of a United States citizen or of an

alien lawfully admitted for permanent residence," or (B) an alien fleeing specified acts of persecution who had entered between specified dates and *inter alia* who did not commit fraud "for the purpose of evading the quota restrictions ...." The Court reasoned that because aliens in category (B) were specifically required to prove that their purpose in entering was not to evade quota restrictions, and because the "otherwise admissible" language was applicable to aliens of both the (A) and (B) categories, Congress could not have intended that failure to meet quota restrictions would render an alien otherwise inadmissible. When § 241(f) was re-enacted in its present form in 1961, relief was continued for aliens in category (A), while category (B) was dropped from the statute. The Court found that the 1961 amendment was not intended to alter the definition of "otherwise admissible," and, therefore, the failure to come within the quota restriction was still to be regarded as a technical violation of the Act which did not bar an alien from seeking relief under § 241(f). The Court went on to hold that:

> "The construction of the statute that we adopt in these cases is further reinforced when the section is regarded in the context of the 1957 Act. The fundamental purpose of this legislation was to unite families. Refugees from Communist lands were also benefited, but the Act principally granted relief to persons who would be temporarily or permanently separated from their nearest relatives if the strict requirements of the Immigration and Nationality Act, including the national quotas, were not relaxed for them. It was wholly consistent with this purpose for Congress to provide that immigrants who gained admission by misrepresentation, perhaps many years ago, should not be deported because their countries' quotas were oversubscribed when they entered if the effect of deportation would be to separate families composed in part of American citizens or lawful permanent residents."

385 U.S. at 224, 225, 87 S.Ct. at 480.

Following *Errico*, this circuit and others adopted a test for determining what cate-

gories of immigration infractions would cause an alien to be found otherwise inadmissible under § 241(f) which focused upon the "qualitative" or "quantitative" nature of the violation. *See Lee Fook Chuey v. Immigration and Naturalization Service*, 439 F.2d 244 (9th Cir. 1970), *Becerra Monje v. Immigration and Naturalization Service*, 418 F.2d 108 (9th Cir. 1969); *Godoy v. Rosenberg*, 415 F.2d 1266 (9th Cir. 1969); *Muslemi v. Immigration and Naturalization Service*, 408 F.2d 1196 (9th Cir. 1969). *See also Gonzalez v. Immigration and Naturalization Service*, 493 F.2d 461 (5th Cir. 1974); *Gonzalez de Moreno v. Immigration and Naturalization Service*, 492 F.2d 532 (5th Cir. 1974); *Bufalino v. Immigration and Naturalization Service*, 473 F.2d 728 (3d Cir.), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973).

In *Lee Fook Chuey, supra*, we stated the essence of the qualitative/quantitative distinction thusly: "[q]uantitative restrictions in the immigration laws serve to limit the number of immigrants (*e. g.*, quota restrictions) while qualitative restrictions are intended to exclude those who are mentally, morally or physically unfit or undesirable." 439 F.2d 246. This definition was also accepted outside the Ninth Circuit. *See, e. g., Gonzalez de Moreno v. Immigration and Naturalization Service, supra*, 492 F.2d at 538.

Consistent with the qualitative/quantitative distinction, certain post-*Errico* decisions found aliens who had somehow manifested an undesirable characteristic which would have been a ground for exclusion at entry under § 212 of the Act to not be "otherwise admissible" under § 241(f). *See Hames-Herrera v. Rosenberg*, 463 F.2d 451 (9th Cir. 1972) (convicted of crimes of moral turpitude, excludable under § 212(a)(9)); *Velasquez-Espinosa v. Immigration and Naturalization Service*, 404 F.2d 544 (9th Cir. 1968) (had previously left the United States to avoid military conscription, excludable under § 212(a)(22)). *See also Jolley v. Immigration and Naturalization Ser-*

vice, 441 F.2d 1245 (5th Cir.), *cert. denied*, 404 U.S. 946, 92 S.Ct. 302, 30 L.Ed.2d 262 (1971) (left for purpose of avoiding conscription); *de Vargas v. Immigration and Naturalization Service*, 409 F.2d 335 (5th Cir. 1968), *cert. denied*, 396 U.S. 895, 90 S.Ct. 192, 24 L.Ed.2d 172 (1969) (re-entered after prior deportation without permission of Attorney General, excludable under § 212(a)(17)).

Also in a manner arguably consistent with the qualitative/quantitative test, this circuit held that an alleged failure to comply with § 212(a)(14) did not render an alien otherwise inadmissible under § 241(f). *Godoy v. Rosenberg, supra*. If *Godoy* were still good law, we would have no choice but to hold for Chow here.

*Reid v. Immigration and Naturalization Service, supra*, however, cast serious doubt upon the analysis employed in *Godoy*. In *Reid*, the Supreme Court not only limited the applicability of § 241(f) to charges of fraud arising under § 212(a)(19), it also called into question the utility of the qualitative/quantitative analysis of "otherwise admissible." Noting that the lower courts were in disarray as to which grounds of deportability under § 212 were waived by § 241(f), the court cited to a line of decisions which had held that the section waived any charge to which fraud was "germane," and then cited to cases holding that any "quantitative" ground was waived. 420 U.S. at 629, 95 S.Ct. at 1170. In footnoting the "qualitative/quantitative" decisions, the Court stated:

"It is, of course, difficult to determine which grounds for exclusion fit which characterization. Arguably, for example, the failure to obtain the required certification by the Secretary of Labor dealt with in *Godoy v. Rosenberg, supra*, could as easily have been characterized as 'qualitative.' The Ninth Circuit in *Lee Fook Chuey v. INS*, 439 F.2d 244, 246 (1970), found evasion of inspection a 'quantitative' ground while the Third Circuit in *Bufalino v. INS*, 473 F.2d, at 731, found it

a 'qualitative' ground not subject to § 241(f) waiver."

420 U.S. at 629, n. 6, 95 S.Ct. at 1170 n. 6. The upshot of *Reid* was to overrule our decision in *Lee Fook Chuey* that § 241(f) applied to an alien who entered without inspection by fraudulently representing his citizenship.

*Reid* did not, by its express terms, address the problem of interpreting "otherwise admissible." The language cited above, however, clearly disapproved of our "qualitative/quantitative" test. While *Reid* purported not to overrule *Errico*, see 420 U.S. at 630, 95 S.Ct. at 1170, it certainly indicated that *Errico* was to be confined to its specific facts.

The impact of *Reid* upon prior decisions in our circuit was quickly clarified. One year later, in *Cacho v. Immigration and Naturalization Service, supra*, while we concluded that *Reid* did not bar application of § 241(f) to charges arising under § 212(a)(20) in all instances, we did hold that *Reid* precluded applicability of the defense to a charge arising under § 212(a)(14). In so doing, we specifically held that *Godoy* had been overruled by *Reid*. 547 F.2d at 1067, n. 5.[1] We explained our new position on § 212(a)(14) thusly:

"*Cacho*, . . ., has been charged also with excludability under § 212(a)(14) because he entered the United States for the purpose of performing labor without a certificate, from the Secretary of Labor. The § 241(f) waiver does not reach this ground for exclusion. The basis for exclusion under § 212(a)(14) does not relate to quotas or quota preferences—a legisla-

tive ascertainment, as between acceptable aliens, as to which should be admitted—but to the state of the labor market. Entirely different considerations bear on admissibility."

547 F.2d at 1062.

It is apparent to us that *Reid*, as interpreted by *Cacho*, overruled completely the *Godoy-Chuey* line of decisions. *Reid* demonstrated that for the purposes of § 241(f), the qualitative/quantitative distinction is unsound. *Reid*, however, articulated no standard to replace it. The decision could arguably be read to imply that violation of any substantive ground for exclusion under § 212 with the exception of (a)(19) is sufficient to cause an alien to run afoul of the "otherwise admissible" requirement.[2]

We need not give *Reid* such an expansive reading, however. The quoted language in *Cacho* compels us to hold here that an alien who entered in violation of § 212(a)(14) is not "otherwise admissible" under § 241(f). Even though entry without a labor certification is a facially amoral violation of the Act's admissibility requirements, § 212(a)(14) nonetheless reflects a Congressional judgment that an alien entering the United States for the purpose of performing labor without a certification is an "undesirable" alien. As has been so frequently stated by this and other courts, the purpose of § 212(a)(14) is to exclude aliens competing for jobs with American workers and to protect the American labor force from an influx of skilled and unskilled labor. See *Wang v. Immigration and Naturalization Service*, 602 F.2d 211, 213 (9th Cir. 1979). Circumvention of this require-

---

1. While *Cacho* did not mention *Becerra-Monje v. Immigration and Naturalization Service, supra*, that decision must also be regarded as having been overruled by *Reid* because its holding was explicitly based upon *Godoy*.

2. The Fifth Circuit has interpreted *Reid* as dropping the "otherwise admissible" element of the test for eligibility under § 241(f), and mandating instead that the sole consideration is the charge under which the Service seeks to deport the alien. See *Castro-Guerrero v. Immi-*

*gration and Naturalization Service*, 515 F.2d 615 (5th Cir. 1975). With all due respect, and with an appreciative acknowledgment of that circuit's expression of commiseration with our difficulties in applying § 241(f) at p. 616 of the opinion, we disagree with *Castro-Guerrero*. "Otherwise admissible" remains a vital force in our administration of relief under § 241(f). See *Cacho v. Immigration and Naturalization Service, supra*.

ment does not represent a mere documentary defect, nor even a merely "quantitative" violation of the Act. It represents a direct threat to an interest which Congress has chosen to protect in a manner that was within its prerogative to employ. We hold, therefore, that an alien who entered this country in violation of § 212(a)(14) was not "otherwise admissible" at time of entry and may not raise § 241(f) as a defense to a charge of entry by fraud. Today we make explicit that which was at least implicit in *Reid* and *Cacho*.[3]

We do not believe that our holding emasculates § 241(f). While it is true that the likelihood that an alien who procures a fraudulent entry will also have a valid labor certification is practically nil, § 212(a)(14) requires that an alien have the "purpose of performing skilled or unskilled labor" before he or she must obtain a certification. Consequently, an alien who can prove to the satisfaction of the hearing officer that he or she did not enter with the "purpose" of performing skilled or unskilled labor may invoke § 241(f) if other admission requirements are met.[4]

Turning to Chow's case, we note again that the Board apparently found that she was not "otherwise admissible" because of her failure to comply with § 212(a)(14). While it thus might appear that Chow has had her "day in court," we feel it appropriate to remand this case for a further hearing on § 241(f). Though our holding here is impliedly compelled by *Cacho*, it had not yet

been made explicit at the time of Chow's hearing. The Board's evident confusion as to the precise basis of its holding indicates that a remand would be appropriate, in any event, for a clarification consistent with our opinion. Chow should be permitted to introduce evidence pertinent to her purpose in coming to the United States.

In view of our holding, we find it unnecessary to reach the other points raised by Chow in her brief. The separate § 212(a)(14) charge is now, as we noted earlier, virtually superfluous. If Chow convinces the Board that she did not enter with the purpose of performing labor, then she will also have effectively rebutted the separate charge. If she does not so convince the Board, then she will be deportable under § 212(a)(19) regardless of the applicability of § 212(a)(14).

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

**3.** Our holding also comports with the approach suggested by the Board of Immigration Appeals in prior administrative proceedings. *See Matter of Agustin*, Int. Dec. No. 2714 (B.I.A. 1979); *Matter of Diaz*, 15 I. & N. Dec. 488 (B.I.A. 1975); *Matter of Montemayor*, 15 I. & N. Dec. 353, 358 (B.I.A. 1975) (Appleman, Board Member, concurring); *cf. Matter of Gonzalez*, 16 I. & N. Dec. 564 (B.I.A. 1978).

**4.** Procedural questions such as the standard of proof to be applied to the alien are not before us, and we decline to comment upon them in this appeal. We are cognizant of the difficulties inherent in proving a negative, and we trust that the Board will also properly take this consideration into account in adjudicating

claims to the § 241(f) defense. We also note that we have identified, in the context of an appeal from denial of adjustment of status, factors which may properly be taken into account in determining whether an alien entered with the purpose of performing labor:

> "... (1) the extent of an [alien's] financial resources; (2) whether the resources are sufficient for the [alien's] reasonable needs; (3) how secure or assured the resources are; and (4) the [alien's] employment intentions and skills."

*Wang v. Immigration and Naturalization Service, supra*, 602 F.2d at 214. *Wang* pointed out that this listing of factors was not exhaustive.