Josue CASTRO–GUERRERO,
Petitioner,

v.

IMMIGRATIÓN AND NATURALIZA-
·TION SERVICE, Respondent.

No. 74–1073

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 7, 1975.

Rehearing Denied Aug. 18, 1975.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Sam Williamson, Houston, Tex., for petitioner.

William B. Saxbe, Atty. Gen., U. S. Dept. of Justice, Washington, D. C., Anthony J. P. Farris, U. S. Atty., Houston, Tex., John L. Murphy, Chief, Crim. Div., Robert P. Trout, Atty., Washington, D. C., for respondent.

## ON PETITION FOR REHEARING

(Opinion November 11, 1974, 5 Cir., 1974, 503 F.2d 964)

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In our original decision, Castro-Guerrero v. INS, 5 Cir., 1974, 503 F.2d 964, we reversed Castro-Guerrero's deportation order by the Board of Immigration Appeals and remanded for a determination whether at the time of his entry he met the physical, mental and moral standards for admission set out in § 241 of the Immigration and Nationality Act, 8 U.S.C.A. § 1251. In light of the subsequent decision of the Supreme Court in Reid v. INS, 1975, —— U.S. ——, 95 S.Ct. 1164, 43 L.Ed.2d 501, we grant the Government's petition for rehearing and affirm the order of the Board.[1]

Castro-Guerrero is a native and citizen of Mexico. Although he had earlier spent at least three years as a student in the United States, he was first admitted as an immigrant in 1956. While a resident, he married another alien and they had a son in 1963. By virtue of his birth in the United States the son is an American citizen. The next year the family returned to Cuidad Valles, San Luis Po-

tosi, Mexico at the behest of Castro's father, and remained there for six years. During this time Castro managed a hotel in San Luis Potosi and, although he testified that he made monthly trips to the United States, it is undisputed that by his departure to Mexico he abandoned his U.S. residency. He did not contact the American Consul in Mexico nor did he report his change of address as required.

In 1969 Castro reentered the United States by showing his Alien Registration Receipt Card, Form I–151. Because he had abandoned his American residency and failed to comply with the reporting requirements, the card was no longer valid. On April 6, 1972 the INS, apparently alerted by Castro-Guerrero's application for a replacement Alien Registration Card—his having been lost in the interim—ordered him to show cause why he should not be deported pursuant to § 241(a)(1) of the Act which makes deportable those aliens who at the time of entry belonged to one of the excludable classes set forth in § 212(a), 8 U.S.C.A. § 1182(a).

At the hearing and on subsequent review by the Board of Immigration Appeals, Castro-Guerrero admitted that he had entered the country illegally but asserted through his able attorney that he was saved from deportation by the forgiveness provision of the Act, § 241(f), 8 U.S.C.A. § 1251(f).

In *Reid* the Supreme Court explained the relevant portions of the Immigration and Nationality Act. To aid in the understanding of what we do today, we will reiterate that explanation.

Section 212(a) of the Act sets forth thirty-one classes of aliens who are excluded from admission to the United States as immigrants. The vast majority of these classes are delineated by qualitative factors such as drug addiction, mental retardation, or past criminal record. There are two exceptions to this

---

1. Since certiorari had been granted the Court on its own motion extended the time for filing a petition for rehearing until after the Supreme Court's decision in *Reid*.

generalization. Section 212(a)(19),[2] excludes aliens who seek to procure entry into the United States by fraud and Section 212(a)(20)[3] excludes those who do not have valid entry documents. The two subsections, of course, are frequently both applicable to the same fact situation but it is important to point out that § 212(a)(19) is the only one for which fraud is the sine qua non.

Section 241(a) sets forth a number of classes of aliens already in the United States who may be deported. The subsection under which Castro-Guerrero was deported, § 241(a)(1), makes liable for deportation those aliens who belong to one of the excludable categories listed in § 212(a).

Subsection 241(f), the forgiveness provision, is a limitation on the deportability portions of § 241.[4] As is pointed out in a discussion of the legislative history of the Act in Immigration, etc., Service v. Errico, 1966, 385 U.S. 214, 225, 87 S.Ct. 473, 480, 17 L.Ed.2d 318, 326, the fundamental purpose of this provision was to preserve family unity.

■ In *Errico* the Supreme Court held that, despite the fact that the language of § 241(f) closely tracks that of § 212(a)(19), forgiveness is not limited to those excluded under § 212(a)(19). Aliens with the requisite family ties are saved from deportation by the forgive-

ness provision even though deportation was sought because they were excludable under § 211(a), 8 U.S.C.A. § 1181(a), which makes excludable those who have not complied with quota restrictions. In the course of this holding the Court stated that "§ 241(f) waives any deportation charge that results directly from the misrepresentation regardless of the section of the statute under which the charge was brought, provided that the alien was 'otherwise admissible at the time of entry.'" 385 U.S. at 217, 87 S.Ct. at 476, 17 L.Ed.2d at 322.

This language, apparently setting up a two prong test for the applicability of § 241(f)—(i) was there fraud, (ii) was the alien otherwise admissible—has led this Court down a tortuous path—but we have not gone alone.[5]

In Jolley v. INS, 5 Cir., 1971, 441 F.2d 1245, we held that the forgiveness provision was unavailable to the petitioner—not because the INS sought to deport him as excludable under § 212(a)(20) but rather because he was otherwise *inadmissible* as a draft evader. § 212(a)(22). We took a similar approach in de Vargas v. INS, 5 Cir., 1968, 409 F.2d 335 (deportation sought for excludability under § 212(a)(17)), Castillo-Lopez v. INS, 5 Cir., 1971, 437 F.2d 74 (excludable under § 241(a)(13)) and Gonzalez v. INS, 5 Cir., 1974, 493 F.2d 461 (grounds for excludability not stated). More significantly, in

---

**2.** § 212(a)(19) provides as follows:

Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact;

**3.** § 212(a)(20) provides as follows:

Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 1181(a) of this title;

**4.** The forgiveness provision reads as follows:

The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

**5.** *See, e. g.,* United States v. Osuna-Picos, 9 Cir., 1971, 443 F.2d 907; Lee Fook Chuey v. INS, 9 Cir., 1971, 439 F.2d 244.

Gonzalez de Moreno v. INS, 5 Cir., 1974, 492 F.2d 532, we held, as we did in our original decisions in *Castro-Guerrero* and in Ruiz-Salazar v. INS,[6] 5 Cir., 1974, 505 F.2d 118, based on *Gonzalez de Moreno* that the petitioner was saved by the forgiveness provision even though he was excludable under § 241(a)(20).[7]

Next to arrive on the scene was *Reid*. Its intent, if not its stated purpose, was to resolve the conflict in the Circuits and so to unravel Lady MacBeth's masterpiece.[8]

■■ *Reid* was the appeal of an affirmance by the Second Circuit Court of Appeals of an order of deportation under § 241(a)(2)—failure to undergo inspection upon entry. The opinion, however, reaches beyond this narrow holding. The *Errico* doctrine that the forgiveness provision is available if there has been a misrepresentation no matter the section under which the charge is brought was quite clearly rejected. —— U.S. at —— – ——, 95 S.Ct. at 1169–1170, 43 L.Ed.2d at 509–10. In its place the Court substituted a bright lines test. Section 241(f) waives the fraud on the part of the alien in only two situations— (i) where deportation is sought under § 242(a)(1) for excludability under § 211(a)(1)–(2), the grounds urged by the INS in *Errico*, (ii) where deportation is sought under § 241(a)(1) for excludability under § 212(a)(19). Id. at ——, 95 S.Ct. at 1170, 43 L.Ed.2d at 510. Thus, without overruling *Errico*, the Court has

effected a change in emphasis. The only factor that need now be considered in determining the applicability of the forgiveness provision is the section of the Act under which deportation is sought and found to exist.

Although this solution may at first blush appear to be somewhat arbitrary, the Court obviously thought there is justification for it. At the very least it effectuates a clarification of a statutory provision that has sorely needed it. As the Court emphasized the express terms of § 241(f) speak in words almost identical with § 212(a)(19). Although, on the surface, this appears to put too much weight on the section of the Act specified, in the deportation papers the law has long required that the alien be apprised of the charges against him and the statutory provisions under which he is alleged to be deportable. 8 U.S.C.A. § 1252(b)(1); 8 CFR § 242.1(b).

■ Petitioner urges on rehearing that by holding *Reid* applicable to him we give it a retroactive effect and that special circumstances present in this case make such an effect unwarranted. Retroactivity is not in issue. The mandate was stayed pending the Supreme Court's decision in *Reid*. The Supreme Court has spoken and we must listen. We have and have heard.

■ Since petitioner was found to be deportable under § 212(a)(20) the forgiveness section is not available.

Affirmed.

---

**6.** *Ruiz-Salazar* is also before us on rehearing today.

**7.** In Cortez-Flores v. INS, 5 Cir., 1974, 500 F.2d 178, our crystal ball worked better. With remarkable prescience, we held § 241(f) inapplicable to § 241(a)(2) which makes subject to deportation an alien who enters the United States "without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States. . . ." As will be

discussed, this is the Supreme Court's direct holding in *Reid*.

**8.** In surveying the decisions of the Courts of Appeals construing the forgiveness provision in light of *Errico*, the Supreme Court characterized them by Macduff's summary (mistakenly attributed to Lady MacBeth) "Confusion now hath made his masterpiece." To which one might add that elsewhere, MacBeth, himself, said, "Which of you hath done this" and later, "Thou canst not say I did it; never shake thy gory locks at me."