Kelly K. PERSAUD, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 75–1499.

United States Court of Appeals,
Third Circuit.

Argued March 11, 1976.

Decided June 29, 1976.

Robert Jay Vedatsky, John T. Spotila, Philadelphia, Pa., for petitioner.

B. Franklin Taylor, Acting Chief, Government Regulations Section, Crim. Div., James P. Morris, Chester J. Halicki, Dept. of Justice, Washington, D. C., for respondent.

Before VAN DUSEN and WEIS, Circuit Judges, and STERN, District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

A variation on the problem of prosecutorial discretion underlies this appeal from a deportation order. The Immigration and Naturalization Service filed two charges against an alien, each based on the same misrepresentation. On the more serious of the charges, a statutory forgiveness provision may be available but the Service refused to consider it, maintaining that the relief was not applicable to the other charge, a lesser included offense. We conclude that the Immigration Service was led into error by an unduly restrictive reading of *Reid v. INS,* 420 U.S. 619, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975), and, accordingly, we vacate and remand.

On April 11, 1972, the Service preliminarily approved petitioner Persaud's application for permanent resident alien status

based on his marriage to an American citizen. However, the approval was conditioned upon his re-entry to the country after obtaining a visa from the United States Consulate in Toronto, Canada. Petitioner's wife died in November, 1972, and some months later he went to Toronto in order to obtain the visa. He submitted to a full alien entry inspection, supplied all of the requested documentation, but did not reveal that his wife had died. In April, 1973, Persaud received his visa and re-entered the United States.

In June, 1974, INS ordered the petitioner to appear at a deportation hearing. The order to show cause alleged he had entered the United States as an immediate relative of a United States citizen, but that he had failed to disclose at the time he obtained the visa that his wife was deceased. He was charged with being deportable under Section 241(a)(1) of the Immigration and Nationality Act because at the time of his entry he was excludable (1) for having procured a visa, or other documentation, by fraud or by willfully misrepresenting a material fact in violation of Section 212(a)(19) of the Act, and (2) for not being in possession of a valid unexpired immigrant visa, re-entry permit, border crossing identification card, or other valid entry document in violation of § 212(a)(20) of the Act. In August, 1974, the immigration judge found that petitioner was deportable on the basis of the charges set forth in the order to show cause, and granted the privilege of voluntary departure. Petitioner took no appeal from that determination.

On April 11, 1975, Persaud was notified that arrangements had been made for his departure to Trinidad. Eleven days later he again married an American citizen and thereafter applied to re-open his deportation proceeding. Persaud contended that his second marriage made him eligible for relief under § 241(f), but the immigration judge denied the motion. The Board of Immigration Appeals affirmed, holding that because Persaud was excludable on entry under § 212(a)(20),[1] he was not entitled to benefit under § 241(f).

■ Congress enacted § 241(f) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f), as a humanitarian measure to ease the plight of aliens who had entered the country by fraud but who had close family ties with American citizens or permanent resident aliens. This provision was intended to keep families united by relaxing some of the rigorous provisions of existing law. Once the alien qualifies under the provisions of § 241(f), he will not be deported. 1 C. Gordon and H. Rosenfield, Immigration Law and Procedure § 4.7(c) (1975).

The Supreme Court has considered the provisions of the statute twice within the past decade, *INS v. Errico,* 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966), and *Reid v. INS, supra.* In *Errico,* the Court read the statute broadly, but in *Reid,* narrowed its scope considerably.

An analysis of § 241(f) is helpful for an understanding of its operation. It reads in pertinent part:

"(f) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen . . . . ."

Thus, in order for the statute to apply, the alien must have been:

1. excludable at the time of entry because he sought by fraud or misrepresentation:

---

1. Section 212(a), 8 U.S.C. § 1182(a), lists some thirty-one different grounds for exclusion. Only two are implicated in this appeal. Section 212(a)(19) provides for the exclusion of one entering the country by fraud, and describes fraud in terms almost identical to those of § 241(f). Section 212(a)(20) provides for the exclusion of:

   "[A]ny immigrant who at the time of admission is not in possession of a valid unexpired immigrant visa . . . . ."

a. the procurement of documentation; or

b. entry into the United States; and

2. otherwise admissible; and

is the spouse, parent, or child of a United States citizen or a lawful permanent resident alien.

In the *Errico* case, the immigrants made misrepresentations to avoid quota restrictions. Instead of relying on the excludability for fraud covered by § 212(a)(19), the Immigration and Naturalization Service argued for deportation because, not having met quota requirements, the aliens were not "otherwise admissible" under the terms of § 241(f). The Court disagreed and held that the immigrants were entitled to the benefits of 241(f). In the course of its opinion, the Court said:

"At the outset it should be noted that even the Government agrees that § 241(f) cannot be applied with strict literalness. Literally, § 241(f) applies only when the alien is charged with entering in violation of § 212(a)(19) of the statute, which excludes from entry '[a]ny alien who. . . has procured a visa or other documentation . . . by fraud, or by willfully misrepresenting a material fact.' Under this interpretation, an alien who entered by fraud could be deported for having entered with a defective visa or for other documentary irregularities even if he would have been admissible if he had not committed the fraud. The Government concedes that such an interpretation would be inconsistent with the manifest purpose of this section, and the administrative authorities have consistently held that § 241(f) waives any deportation charge that results directly from the misrepresentation regardless of the section of the statute under which the charge was brought, provided that the alien was 'otherwise admissible at the time of entry.'" 385 U.S. at 217, 87 S.Ct. at 476 (footnotes omitted)

Essentially, petitioner relies upon that language. However, the Immigration Service contends that the later case of *Reid v. INS, supra,* requires a contrary result. In *Reid,* the alien entered the country by falsely representing that he was a United States citizen and thereby evaded full inspection.[2] The Court held that § 241(f) does not apply when the ground for deportation is separate and independent from the basis for exclusion under § 212(a). The actual holding in *Reid* is not adverse to Persaud's position, but the Immigration Service interprets certain dicta as supporting its view that § 241(f) relief is not available to an alien charged under § 212(a)(20). In particular, the Service relies upon the Court's discussion of *Errico* :

"In view of the language of § 241(f) and the cognate provisions of § 212(a)(19), we do not believe *Errico*'s holding may properly be read to extend the waiver provisions of § 241(f) to any of the grounds of excludability specified in § 212(a) other than subsection 19." 420 U.S. at 630, 95 S.Ct. at 1171.

The Courts of Appeals for the Fifth and Ninth Circuits have read this dictum as prohibiting the application of § 241(f) when an alien is charged with being excludable under § 212(a)(20). See *Escobar Ordonez v. INS,* 526 F.2d 969 (5th Cir. 1976); *Guel-Perales v. INS,* 519 F.2d 1372 (9th Cir. 1975); *Castro-Guerrero v. INS,* 515 F.2d 615 (5th Cir. 1975). Cf. *Pereira-Barreira v. United States Dept. of Justice, INS,* 523 F.2d 503 (2d Cir. 1975).

In our view, however, such a narrow interpretation is neither demanded nor desirable. *Reid* focused on an alien's attempt to utilize § 241(f) when the basis for deportation was completely unrelated to fraud under § 212(a)(19), that is, a situation in which, absent fraud, deportation would nevertheless have been proper. The Court expressed its concern that § 241(f) was be-

---

2. Entrants who claim United States citizenship are not subjected to the screening and investigation normally given to aliens whose physical, mental and moral qualifications for admissions are reviewed. See 1 C. Gordon and H. Rosen-field, Immigration Law and Procedure §§ 3.15–3.16(b); Significant Development—Immigration Law, 54 Boston U.L.Rev. 851 (1974); *Reid v. INS, supra.*

ing employed to neutralize grounds for deportation which had no connection with the fraud:

"It likewise gives weight to our belief that Congress, in enacting § 241(f), was intent upon granting relief to limited classes of aliens whose fraud was of such a nature that it was more than counterbalanced by after-acquired family ties; it did not intend to arm the dishonest alien seeking admission to our country with a sword by which he could avoid the *numerous substantive grounds for exclusion unrelated to fraud,* which are set forth in § 212(a) of the Immigration and Nationality Act." 420 U.S. at 630–631, 95 S.Ct. at 1171 (Emphasis added)

■ From this, we believe that the essence of *Reid* and *Errico* is that § 241(f) will not be available when its application would permit an alien to avoid a basis for deportation which is separate, independent and unrelated to the fraud. However, *Reid* does not hold that § 241(f) may be circumvented by the Service when the fraudulent acts alone form the basis for deportation.

■ A wooden application of *Reid's* dicta would permit the INS to freely avoid implication of § 241(f) by simply citing subsection 20 as a basis for deportation in addition to a quota violation or the fraud itself. It is important to recognize the relationship between exclusion for fraud under § 212(a)(19) and exclusion for invalid documentation under § 212(a)(20). Fraud in procuring documentation results in its invalidity so that whenever acts of fraud are perpetrated in securing documents, subsection 20, as well as subsection 19, is violated. Subsection 20, therefore, is, for all intents and purposes, a "lesser included offense" under subsection 19.

An alien cited only under subsection 19 may invoke the forgiveness provisions of § 241(f). However, adopting its restrictive interpretation of *Reid,* the Immigration Service, if it chooses, may, under the exact same set of facts, charge the alien with the additional, ever present, violation of (20) or only with a violation of (20), and, thus, deprive him of the benefits of § 241(f). Practically speaking, then, the administrative agency may effectively thwart the congressional intent through its unfettered discretion to charge a violation of a lesser offense and so nullify the forgiveness provisions. We do not believe that the Supreme Court intended to allow an administrative agency to exercise such power, especially since § 241(f) entails no exercise of discretion by the Attorney General. *See* 1 C. Gordon and H. Rosenfield, Immigration Law and Procedure, *supra* at 4.7(c).

At the hearing of this matter before the immigration judge, petitioner Persaud conceded that he had been admitted to the United States as the husband of Paula Persaud, that she had died on November 8, 1972, and that he did not disclose this fact when he obtained his visa. The testimony which was taken did little more than elaborate on these facts. Based on this evidence, the Immigration Service found violations of both subsections 19 and 20. Since the facts which support a finding of deportability based on (19) also establish a violation of (20), the charges are not separate and independent but, rather, are inextricably intertwined. Thus *Reid's* raison d'être is absent in this case, and we conclude that the Board of Immigration Appeals erred in refusing to consider the availability of relief under § 241(f).

Since there may be other factors bearing on the availability of such relief,[3] we indicate no view as to whether it should be granted but remand the matter to the immigration authorities for further proceedings not inconsistent with this opinion.

STERN, District Judge (concurring).

I agree with both the reasoning and the result of Judge Weis' opinion. I write only to observe that, in deciding whether to grant relief under § 241(f), the Board of

---

3. *See* 1 C. Gordon and H. Rosenfield, Immigration Law and Procedure, § 4.7c, at 193 (Supp. 1975).

**780**

Immigration Appeals ought to consider whether petitioner's remarriage after receiving a final notice of deportation created the sort of family relationship which Congress intended to protect in enacting the forgiveness provision.

In *INS v. Errico*, 385 U.S. 214, 220, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966), Mr. Chief Justice Warren analyzed the legislative history of § 7 of the Immigration and Nationality Act of 1957, the predecessor of the present § 241(f):

> The intent of the Act is plainly to grant exceptions to the rigorous provisions of the 1952 Act for the purpose of keeping family units together. Congress felt that, in many circumstances, it was more important to *unite* families and *preserve* family ties than it was to enforce strictly the quota limitations or even the many restrictive sections that are designed to keep undesirable or harmful aliens out of the country.

(Footnote omitted; emphasis added)

Petitioner's first notice of the proceedings against him was an "order to show cause, notice of hearing and warrant for arrest of alien" issued by the INS on June 13, 1974. A hearing was held on July 24, 1974 and August 13, 1974, and on August 13, 1974 petitioner was ordered deported. A thirty-day voluntary departure date was set, with extensions of time until the resolution of a pending private bill for petitioner's relief. The private bill was not passed, and on April 11, 1975 petitioner was notified that arrangements had been made for his departure to Trinidad and Tobago on May 15, 1975. It was not until April 22, 1975, eleven days after receiving this final notice and about three weeks before his scheduled deportation, that petitioner again married an American citizen.

I have substantial doubt whether Congress intended § 241(f) to apply to marriages made, as it were, on the way to the deportation dock. These, it seems to me, are not the sort of "family units" or "family ties" that this humanitarian provision was designed to preserve.

Since we need not reach these issues here, I concur fully in the opinion and judgment of the Court.