547 F.2d 1057
 Rudy CACHO, also known as Melanio Montemayor, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Vilma Aida ALVARENGA de PAZ, also known as Vilma Chavez, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 75-2319, 75-2535.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 18, 1976.
 
 Robert S. Bixby (argued), of Fallon, Hargreaves, Bixby & McVey, San Francisco, Cal., for petitioner in No. 75-2319.
 Donald L. Ungar (argued), of Phelan, Simmons & Ungar, San Francisco, Cal., for petitioner in No. 75-2535.
 Richard I. Chaifetz, Atty. (argued), of Government Regulations Section, Crim. Div., U. S. Dept. of Justice, Washington, D. C., for respondent.
 Before MERRILL and HUFSTEDLER, Circuit Judges, and KING,* District Judge.
 MERRILL, Circuit Judge:
 
 
 1
 These consolidated petitions seek this court's review of final decisions of the United States Immigration and Naturalization Service ordering deportation of the petitioners. The issue presented is whether the Board of Immigration Appeals erred in not applying the waiver of deportation provisions of § 241(f) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f), to aliens who were excludable at the time of entry by virtue of the provisions of § 212(a) of the Act, 8 U.S.C. § 1182(a), and thus were deportable under § 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1).
 
 
 2
 The cases involve a multitude of statutory provisions whose very citation is enough to discourage the reader and create confusion. We start with § 212(a), which provides that aliens in 31 specified classes "shall be excluded from admission into the United States."[1] We move then to § 241(a), which provides for deportation of aliens who suffer certain disabilities, one of which is that they were "excludable" at the time of entry.[2]
 
 
 3
 At the heart of the issues presented here is the waiver of deportation provided by § 241(f). That subsection reads:
 
 
 4
 "(f) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."
 
 
 5
 Rudy Cacho was admitted to the United States in September of 1971 for permanent residence as the spouse of Barbara Pimental, a United States citizen. In 1974 the Service charged that Cacho had married Barbara Pimental for the purpose of entering the United States to work and reside here permanently, and that at the time of their purported marriage both were lawfully married to other spouses. The immigration judge found that the evidence sustained the charge and ordered Cacho deported on the ground that he had obtained his immediate relative immigrant visa by fraud, the ground specified in § 212(a)(19), and had not obtained the labor certificate required by § 212(a)(14), both grounds being made bases for deportation under § 241(a) (1). The Board affirmed, enlarging the basis of the charge to include Cacho's failure to have a valid immigration visa pursuant to § 212(a)(20).
 
 
 6
 Before Cacho's deportation he divorced his prior wives and married a permanent resident alien. He then filed a motion to reopen the termination, claiming exemption from deportation under § 241(f). The Board denied the motion and Cacho seeks review.
 
 
 7
 Vilma Aida Alvarenga de Paz was admitted to the United States for permanent residence in 1957. During her residence in this country she had three children. In 1964 she left the United States, going to Honduras to live with her husband, whom she later divorced. On her return to this country in 1968 she applied for an immigrant visa, but encountered delay. Her children were sick and she became desperate. She took a bus to Tijuana, and on October 1, 1970, applied for admission to the United States at San Ysidro, California. She displayed her old passport and applied for a new Alien Registration Receipt Card, stating that she had lost her old card after departing the United States only three days before. This statement was false, but she made it because she was afraid that if she told the truth she would not be admitted to the United States.
 
 
 8
 When the Service sought to deport her she invoked § 241(f) for her defense on the basis of her relationship to her children born in the United States. The immigration judge ordered her deported on the basis of her failure to have an immigrant visa when she entered the United States, a ground for exclusion under § 212(a)(20), made a basis for deportation by § 241(a)(1). Accordingly, he rejected her § 241(f) defense. The Board affirmed.
 
 
 9
 INS v. Errico, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966), bears upon the issues presented by these facts. There the Supreme Court considered the companion cases of two aliens. One had fraudulently represented himself to be a skilled mechanic, thereby obtaining a quota preference. He had then entered the United States with his wife and fathered a child by her. The other alien had contracted a marriage by proxy for the sole purpose of obtaining nonquota status. She then entered the United States but never lived with her husband and had never intended to do so. After her entry she gave birth to a child. The Service in each case, on discovering the fraud, sought deportation of the alien. It proceeded, however, not under § 212(a)(19) of the Act, relating to fraudulent entry, but under § 211(a) of the Act, 8 U.S.C. § 1181(a).[3] The Court held the waiver provisions of § 241(f) to apply to § 211(a), and that where an alien evaded quota restrictions by fraud, he was still "otherwise admissible at the time of entry" within the meaning of § 241(f).
 
 
 10
 Since that decision confusion has reigned in the courts of appeals as to the meaning of the phrase "otherwise admissible." In Reid v. INS, 420 U.S. 619, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975), the Court sought to bring confusion to an end.
 
 
 11
 In that case the alien had secured admission by falsely representing himself to be a citizen of the United States. On discovery of the fraud the Service had sought to deport him under § 241(a)(2) of the Act, as one who had entered without inspection. (See footnote 1, supra.) The Court distinguished between the terms "deportability" and "excludability" as used in the Act, the latter being but one ground for the former. The waiver afforded by § 241(f), the Court pointed out, was confined to the provisions of § 241 relating to the deportation of aliens "excludable at the time of entry." This, the Court held, had reference only to § 241(a)(1) and did not have reference to § 241(a) (2), where the specified grounds for deportation had nothing to do with "excludability." It held that § 241(f) did not forgive fraud used by an alien to avoid inspection, rendering him deportable under § 241(a)(2).
 
 
 12
 The Court in Reid dealt at length with Errico, and the confusion resulting from its holding. To clarify the holding it stated:
 
 
 13
 "We adhere to the holding of that case, which we take to be that where the INS chooses not to seek deportation under the obviously available provisions of § 212(a)(19) relating to the fraudulent procurement of visas, documentation, or entry, but instead asserts a failure to comply with those separate requirements of § 211(a), dealing with compliance with quota requirements, as a ground for deportation under § 241(a)(1), § 241(f) waives the fraud on the part of the alien in showing compliance with the provisions of § 211(a)."
 
 
 14
 420 U.S. at 630, 95 S.Ct. at 1170 (emphasis supplied).
 
 
 15
 The Court continued with this statement on which the Service here relies as rendering § 241(f) inapplicable to aliens excludable under § 212(a)(14) or (20):
 
 
 16
 "In view of the language of § 241(f) and the cognate provisions of § 212(a) (19), we do not believe Errico's holding may properly be read to extend the waiver provisions of § 241(f) to any of the grounds of excludability specified in § 212(a) other than subsection 19."
 
 Id. This in turn was followed by:
 
 17
 "This conclusion, by extending the waiver provision of § 241(f) not only to deportation based on excludability under § 212(a)(19), but to a claim of deportability based on fraudulent misrepresentation in order to satisfy the requirements of § 211(a) gives due weight to the concern expressed in Errico that the provisions of § 241(f) were intended to apply to some misrepresentations that were material to the admissions procedure. It likewise gives weight to our belief that Congress, in enacting § 241(f), was intent upon granting relief to limited classes of aliens whose fraud was of such a nature that it was more than counterbalanced by after-acquired family ties * * *."
 
 
 18
 Id.
 
 
 19
 The Service contends that since the waiver provision may not properly be extended to any ground of excludability other than § 212(a)(19), it cannot be extended to § 212(a)(20). It reasons that failure to comply with that subsection constitutes unforgiven grounds for exclusion and deportation, even though, as in Errico, the basis for the failure to comply was fraud that was forgiven by § 241(f). The Service is supported in its contention by Castro-Guerrero v. INS, 515 F.2d 615 (5th Cir. 1975). We must respectfully disagree. In this we find support in Persaud v. INS, 537 F.2d 776 (3d Cir. 1976).
 
 
 20
 We note first that lack of possession of proper entry documentation is the subject of both § 211(a) and § 212(a)(20). Here both Cacho and Alvarenga, by virtue of their fraudulent misrepresentations, were excludable under § 212(a) (19). They were also excludable under § 211(a) and § 212(a)(20), by virtue of lack of valid entry documents due, in Cacho's case, to fraudulent marriage to a citizen of the United States, and, in Alvarenga's case, to a false claim of being a resident alien. To hold that § 241(f) forgives the § 212(a)(19) and § 211(a) bases for exclusion but denies forgiveness to that provided by § 212(a) (20) results in giving the Service the power to write § 241(f) off the books by a discriminating choice between available charging sections. Every instance of § 212(a)(19) fraud must, as we conceive it, invalidate any entry documents presented, and render the entry one without possession of valid documentation under § 212(a)(20). Any entry made by way of fraudulent claims of compliance with quota requirements under § 211(a) must likewise result in entry without valid documentation under § 212(a)(20). Yet under the Service's reading of Reid, it can avoid the § 241(f) forgiveness by charging the alien not under § 211(a) or § 212(a)(19), but under § 212(a)(20), which, so far as we can see, would invariably be available as an alternative.[4]
 
 
 21
 As we understand Reid, it does not call for this result. Under Reid's construction of Errico, where one secures entry into the United States as an alien by means of fraudulent evasion of quota restrictions, § 241(f) operates to waive the § 212(a)(19) ground for exclusion and also to waive the underlying fraud itself. It serves to preclude deportation of the alien on the ground that he had committed fraud and also on the ground that he did not in fact meet quota requirements. The facts that the alien could not honestly gain entry because of restrictive quotas, and had lied about it, were felt to more than counterbalanced by familial relationships. Thus, despite the fact that he did not meet quota requirements, he was "otherwise admissible" within the terms of § 241(f).
 
 
 22
 As a result, where the fraud constitutes misrepresentations which show compliance with quota requirements, forgiveness of the fraud operates to accomplish compliance with those requirements. If the need to comply with quota requirements is thus satisfied as a matter of law, the need to provide documentary proof of compliance as a matter of fact (the subject of § 212(a) (20)) is satisfied as well.
 
 
 23
 The Service contends that this court, in Guel-Perales v. INS, 519 F.2d 1372 (9th Cir. 1975), reached the opposite result in line with the Fifth Circuit in Castro-Guerrero, supra. We disagree. The fraud in Guel-Perales, as in Reid, was misrepresentation of the fact of American citizenship. Although the charging section in Guel-Perales was § 212(a)(20), which deals with excludability (unlike Reid where the charging section was § 241(a)(2)), the fraudulent misrepresentation in Guel-Perales did not serve to show compliance with quota requirements and thereby satisfy the need to provide the documentary proof required by § 212(a)(20). It served instead to avoid the necessity for compliance with any portion of § 212(a) by avoiding entry as an alien. This was not the kind of underlying fraud forgiven by § 241(f). Faced with such unforgiven fraud § 212(a)(20) retains all its vigor.
 
 
 24
 We conclude that under Errico, as construed in Reid, neither Cacho nor Alvarenga was excludable under § 212(a)(20). Cacho, however, has been charged also with excludability under § 212(a)(14) because he entered the United States for the purpose of performing labor without a certificate from the Secretary of Labor. The § 241(f) waiver does not reach this ground for exclusion. The basis for exclusion under § 212(a)(14) does not relate to quotas or quota preferences a legislative ascertainment, as between acceptable aliens, as to which should be admitted but to the state of the labor market. Entirely different considerations bear on admissibility. The fraud with which he was charged and which was waived by § 241(f) did not operate to accomplish compliance with this subsection.[5] We conclude that the order for deportation of Cacho on this ground must be affirmed.
 
 
 25
 In Cacho the order is affirmed as founded on § 212(a)(14) and reversed as founded on § 212(a)(20). In Alvarenga de Paz the deportation order is reversed and the matter remanded for further proceedings under § 241(f).
 
 
 
 *
 Honorable Samuel P. King, Chief United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 § 212(a) of the Act is 8 U.S.C. § 1182(a). Relevant to these cases is the following portion of the subsection:
 "(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
 (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has (made) and certified to the Secretary of State and to the Attorney General (certain determinations with reference to the effect the alien's employment will have upon the labor market.) * * *
 (19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact;
 (20) Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section (211)(a) of this title."
 
 
 [2]
 § 241(a) of the Act is 8 U.S.C. § 1251(a). § 241(a)(1) and (2) provide:
 "(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who
 (1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;
 (2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States.
 
 
 [3]
 § 211(a) of the Act, as it read at the time of Errico, provided:
 "No immigrant shall be admitted into the United States unless at the time of application for admission he (1) has a valid unexpired immigrant visa or was born subsequent to the issuance of such immigrant visa of the accompanying parent, (2) is properly chargeable to the quota specified in the immigrant visa, (3) is a nonquota immigrant if specified as such in the immigrant visa, (4) is of the proper status under the quota specified in the immigrant visa, and (5) is otherwise admissible under this Act."
 
 
 [4]
 In Persaud v. INS, 537 F.2d 776, 779 (3d. Cir. 1976), the court dealt with the same incongruity. It stated:
 "An alien cited only under subsection (19) may invoke the forgiveness provisions of § 241(f). However, adopting its restrictive interpretation of Reid, the Immigration Service, if it chooses, may, under the exact same set of facts, charge the alien with the additional, ever present, violation of (20) or only with a violation of (20), and, thus, deprive him of the benefits of § 241(f)."
 
 
 [5]
 The contrary holding of Godoy v. Rosenberg, 415 F.2d 1266 (9th Cir. 1969), we regard as overruled by Reid v. INS, 420 U.S. 619, 629, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975)