Esther SKELLY, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 79–1603.

United States Court of Appeals, Tenth Circuit.

Argued July 7, 1980.
Decided Sept. 18, 1980.

---

Charles R. Hogshead, Tulsa, Okl., for petitioner.

Robert Kendall, Jr., Atty., Dept. of Justice, Washington, D. C. (James P. Morris, Atty., Dept. of Justice, Washington, D. C., with him on the brief), for respondent.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a review of a decision of the Board of Immigration Appeals, pursuant to 8

U.S.C. § 1105a. The order denied the petitioner's motion seeking to reopen deportation proceedings for the purpose of allowing her to apply for a waiver of deportation pursuant to § 241(f) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f).

The question presented is whether § 241(f) of the Immigration and Nationality Act precludes the deportation of petitioner by forgiving a violation of § 212(a)(14) because at the time of entry she was excludable because of not being able to meet the labor certification requirements of § 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14).

The petitioner does not dispute the fact that she did not, at the time of entry, have a labor certificate. She seeks, however, to avoid deportation by invoking § 241(f) of the Act, which provides:

> The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien, otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

8 U.S.C. § 1251(f).

Her argument is that the above-quoted forgiveness provision extends its protection to her even though she is not being deported for fraudulent obtaining of entry documents. She would have us treat a no-labor certificate violation as a species of fraud intended by Congress to cover her. We must hold that it does not accomplish her objective.

## THE FACTS

Petitioner, Esther Skelly, entered the United States on September 29, 1975, as an immigrant pursuant to 8 U.S.C. § 1151(b) on the basis that she was an immediate relative, that is, the spouse of a United States citizen.

On February 13, 1976, the Immigration and Naturalization Service issued petitioner an order to show cause and notice of hearing. The charge was that she was subject to deportation pursuant to 8 U.C.S. § 1251(a)(1)[1] because, at the time of her entry, she was within one or more classes of aliens excludable by law existing at the time of such entry, to wit, aliens who are seeking to enter for the purpose of performing skilled or unskilled labor and in whose case the Secretary of Labor has not made the certification as provided by 8 U.S.C. § 1182(a)(14).

\* \* \* \* \* \*

It was alleged in the charge that:

1. Petitioner was not a citizen or national of the United States.

2. She was a native of Honduras and a citizen of Honduras.

3. She entered the United States at New Orleans, Louisiana on or about September 29, 1975, and at that time she was admitted as an immigrant.

4. She made an application for an immigrant visa at the American Embassy in Tegucigalpa, Honduras on September 19, 1975, and she was issued a visa on September 23, 1975.

5. In obtaining her visa she did not present a labor certificate.

6. She was not required to present such labor certificate on the basis of presenting her marriage certificate showing her marriage on July 18, 1975 in El Progreso, Honduras to Loran Lavearn Presley, a United States citizen.

7. After entry she had performed skilled or unskilled labor.

---

1. Section 241(a)(1) provides:

Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who–

(1) at the time entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;

\* \* \* \* \* \*

8 U.S.C. § 1251(a)(1).

8. Her marriage to Presley was terminated on October 7, 1975 by Decree of Annulment. Said annulment reflects that she married Presley solely for the purpose of gaining entry into the United States.

9. Her marriage to Presley was not a valid one and she was not entitled to exemption from a labor certificate.

\* \* \* \* \* \*

Petitioner's deportation hearing was held on March 18, 1976; at that time she waived the reading of the charges in the order to show cause and conceded that the allegations were true and correct, and that she was deportable under the charge of no labor certification. She was granted 60 days, on or before May 20, 1976, in which to leave the United States voluntarily with no expense to the government. She failed to depart the United States as required, and on July 13, 1976; the Immigration and Naturalization Service issued a warrant of deportation together with a notice that arrangements had been made for her departure to Honduras on July 27, 1976. This was not to be. On July 12, 1976, a Petition to Classify Status of Alien Relative was filed on behalf of petitioner by David Allen Skelly based on his marriage to her on May 4, 1976. The petition was denied by the District Director on September 29, 1976, and was dismissed on July 8, 1977, on the grounds that she was statutorily ineligible for the benefits sought under 8 U.S.C. § 1151(b).

On July 22, 1977, she was notified that arrangements had been made for her departure to Honduras on August 3, 1977. She failed to surrender herself and, of course, also failed to depart the United States as required.

On July 28, 1977, she filed a complaint seeking declaratory judgment in the United States District Court for the Northern District of Oklahoma. She prayed for judicial review of her deportation order. This complaint was dismissed by the district court on October 18, 1977.

She was found in her residence on September 21, 1978, by an immigration official, but was not taken into custody for deportation because it was determined that she had a one–year–old child, and she agreed that she would voluntarily surrender for deportation on October 10, 1978. Before that date, on October 2, 1978, she filed a motion to reopen her deportation proceedings; she also applied for a stay of deportation seeking deferred action status from deportation pursuant to the Service's Operations Instruction 103.1(a)(1)(ii). She filed this as the mother of a United States citizen child of tender years under 8 U.S.C. § 1251(f).

Petitioner's application for a stay was denied on October 10, 1978. A motion to reopen seeking relief pursuant to 8 U.S.C. § 1251(f) was filed on October 4, 1978. It was denied by the immigration judge on November 7, 1978. An appeal of that decision was perfected to the Board on November 17, 1978. The Board dismissed the appeal on May 7, 1979, on the basis that it agreed with the ruling of the immigration judge refusing to reopen. The Board stated that 8 U.S.C. § 1251(f) did not waive excludability under 8 U.S.C. § 1182(a)(14), which section provided for a labor certificate.

■ The determinative question is whether § 241(f) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f), precludes the deportation of petitioner even though she otherwise would have been excludable from this country at the time of her entry due to her inability to meet the labor certification requirements of § 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14), the so–called "forgiveness" section.[2] It allows a limited waiver of deportability of individuals who have certain family relationships, who are United States citizens or resident aliens. It does not ex-

2. She seeks to avoid the consequences of the deportation provisions by relying on her two marriages to American husbands and the birth of a child who was American born.

pressly embrace the petitioner's situation, which, in essence, is excludability on the ground that she did not at the time of her entry into the United States have a labor certificate. Section 241(f) is quite limited. It provides in part that:

> The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

Thus, the section's (241(f)) express terms apply to a single condition, namely, that the alien who had sought to enter the United States by fraud or misrepresentation, is the spouse, parent or child of a United States citizen. Here the immigration authorities had concluded that petitioner had not been charged with entering by fraud, even though she also did that, but alleged that she lacked a valid labor certification as required by another section, 212(a)(14). She argues that this court must disregard the charge which the Service brought against her, namely, not having a valid labor certificate, and reach a new and independent conclusion that her facts fit only the § 1182(a)(19) excludability of charge. She further maintains, in the alternative, that § 1182(a)(14) is a lesser included offense which gives her legal status at the time of entry. Finally, she argues that as the wife of a United States citizen and the mother of a United States citizen child, she has qualified for a waiver of deportability pursuant to § 241(f), the "forgiveness" provision, and that this conquers all other deficiencies. The fact is that § 241(f) does not apply to her case. The reason is that she has never been charged with a violation of the entry by fraud section. The charge was, of course, a lack of labor certification. Plain-

ly, § 241(f) provided for a waiver of deportability based on the terms of § 212(a)(19) of the Act, 8 U.S.C. § 1182(a)(19), which sets up a separate basis for exclusion from admission into the United States where the alien has sought to procure, or has other documentation, or seeks to enter the United States by fraud, or by willfully misrepresenting the material facts. She would say that the failure to get a labor certificate is a species of fraud which should be within the sweep of § 212(a)(19). We disagree that it is or *should be* available to her.

## OUTLINE OF LEGAL CONTENTIONS

Petitioner's primary reliance is on two cases: first, the Supreme Court's decision in *Immigration and Naturalization Service v. Errico*, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966), and the Third Circuit's decision in *Persaud v. Immigration and Naturalization Service*, 537 F.2d 776 (3d Cir. 1976). Both of these cases considered the scope of the forgiveness provisions of § 241(f), and petitioner would have us, in some way, graft the forgiveness provision to a violation of the entry without a labor certificate provision.

She also relies generally on the fact of her having, on two occasions, married American citizens, plus her acquisition of a child as a result of the second or Skelly marriage. This is a general reliance. It is almost as if she seeks to interpose these family relationships as having a purging effect as far as her legal entry is concerned.

### I.

Before taking up her arguments, it will prove helpful to review briefly the authorities which have considered and interpreted § 241(f).

In *Immigration and Naturalization Service v. Errico, supra*, the scope of § 241(f), waiver of deportability, was considered. The aliens in that case were charged with violation of quota restrictions under § 211(a) of the Act, 8 U.S.C. § 1181(a). The

Court recognized that the terms of § 241(f) make it applicable only to the case in which a visa or other entry document has been obtained by fraud contrary to § 212(a)(19). 385 U.S. at 217, 87 S.Ct. at 476. Chief Justice Warren stated that "Congress must have felt that aliens who evaded quota restrictions by fraud would be 'otherwise admissible at the time of entry,'" and concluded that § 241(f) did extend to waive violations of § 211(a) as well as violations of § 212(a)(19). The Court further said:

> Elementary principles of statutory construction lead to the conclusion that Congress meant to specify two specific types of fraud that would leave an alien "otherwise admissible" but that would nonetheless bar relief to those aliens who could not claim close relationship with a United States citizen or alien lawfully admitted for permanent residence.

385 U.S. at 223, 87 S.Ct. at 479.

*Reid v. Immigration and Naturalization Service,* 420 U.S. 619, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975), is more to the point. It also construed § 241(f). Its concern was with aliens falsely representing themselves to be United States citizens. Rather than charging them with § 212(a)(19) violations, the Immigration Service sought to deport them under § 241(a)(2), 8 U.S.C. § 1251(a)(2), for having "entered the United States without inspection." The Supreme Court found that the aliens were deportable under § 241(a)(2), and held that the waiver provided by § 241(f) did not reach deportation charges brought under § 241(a)(2). The Court adhered to the narrow holding of *Errico,* that § 241(f) waives fraud in connection with § 211(a), but went on to state that:

> In view of the language of § 241(f) and the cognate provisions of § 212(a)(19), we do not believe *Errico's* holding may properly be read to extend the waiver provisions of § 241(f) to any of the grounds [for] excludability specified in § 212(a) other than subsection (19).

\*      \*      \*      \*      \*      \*

Congress, in enacting § 241(f), was intent upon granting relief to limited classes of aliens whose fraud was of such a nature that it was more than counter–balanced by after–acquired family ties; it did not intend to arm the dishonest alien seeking admission to our country with a sword by which he could avoid the numerous substantive grounds for exclusion unrelated to fraud, which are set forth in § 212(a) of the Immigration and Nationality Act.

420 U.S. at 630–31, 95 S.Ct. at 1171.

Does *Reid* close the door on extension or expansion of the fraud exception? Subsequent circuit court decisions have given § 241(f) a narrow construction. *See, e. g., DeLeon v. Immigration and Naturalization Service,* 547 F.2d 142 (2d Cir. 1976), *cert. denied* 434 U.S. 841, 98 S.Ct. 137, 54 L.Ed.2d 105 (1977) (Section 241(f) does not waive deportability under § 241(a)(5)); *Escobar Ordonez v. Immigration and Naturalization Service,* 526 F.2d 969 (5th Cir.), *cert. denied* 426 U.S. 938, 96 S.Ct. 2655, 49 L.Ed.2d 390 (1976) (Section 241(f) does not permit reopening of deportation proceedings when § 212(a)(20) is the basis for deportation.) The only apparent exception to this trend is the Third Circuit's decision in *Persaud v. Immigration and Naturalization Service,* 537 F.2d 776 (3d Cir. 1976). In *Persaud,* the alien had applied for entry based on his marriage to a U.S. citizen. The alien's wife died, but he failed to disclose the fact of her death to immigration officials, and entered the United States. The INS charged him with deportation as excludable under both § 212(a)(19) (fraud) and § 212(a)(20), 8 U.S.C. § 1182(a)(20) (failure to have a valid immigrant visa). The Third Circuit refused to construe the *Reid* decision too narrowly, and allowed the alien to benefit from § 241(f).

> [T]he essence of *Reid* and *Errico* is that § 241(f) will not be available when its application would permit an alien to avoid a basis for deportation which is separate, independent and unrelated to the fraud. However, *Reid* does not hold

that § 241(f) may be circumvented by the Service when the fraudulent acts alone form the basis for deportation.

537 F.2d at 779.

The Third Circuit thus ruled that § 212(a)(20) was a "lesser included offense" in § 212(a)(19), and that the alien could avail himself of § 241(f) because "the charges are not separate and independent, but, rather, are inextricably intertwined." *Id.* But this was constructive fraud used to obtain a visa. There existed a duty to speak and the individual remained silent.

Other circuits since *Reid* which have considered the meaning of § 241(f) in the context of § 212(a)(14), failure to have a labor certificate, have considered noncompliance with the labor certificate requirement of § 212(a)(14) to be an independent offense, unrelated to procuring visas by fraud, and have held that § 241(f) was inapplicable. *Cobián–Hernandez v. Immigration and Naturalization Service*, 587 F.2d 872, 48 A.L.R.Fed. 275 (7th Cir. 1978); *David v. Immigration and Naturalization Service*, 578 F.2d 1373 (3d Cir.) (summary affirmance of BIA decision), *cert. denied* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978); *Cacho v. Immigration and Naturalization Service*, 547 F.2d 1057, 1062 (9th Cir. 1976). In *Cacho*, the Ninth Circuit followed *Persaud* in holding that § 241(f) forgives deportation charges grounded on § 212(a)(20) as well as on § 212(a)(19). It refused, however, to overturn the deportation order of an alien who had also been charged with violation of § 212(a)(14), holding that § 241(f) did not extend to this basis for exclusion.

The basis for exclusion under § 212(a)(14) does not relate to quotas or quota preferences–a legislative ascertainment, as between acceptable aliens, as to which should be admitted–but to the state of the labor market. Entirely different considerations bear on admissibility.

547 F.2d at 1062.

## II.

Attempts by petitioner to distinguish *Cobian–Hernandez*, *David*, and *Cacho*, in urging that § 241(f) should apply to her case are unavailing. Nor is her reliance on *Persaud* successful. Her argument is that a too–narrow reading of *Reid* places excessive discretion in the INS, the result of which is circumvention of § 241(f) altogether by the expedient of deportation charges being brought under alternative sections of the Immigration and Naturalization Act other than § 212(a)(19). Petitioner points out also that once she was within the United States she had only two choices: to work in violation of § 212(a)(14), or to become a pauper or public charge in violation of § 212(a)(8) or (a)(15). She further contends that § 212(a)(14) is in effect a "lesser included offense" under § 212(a)(19), and under the rationale of *Persaud*, § 241(f) should apply to waive her deportability.

It may well be inevitable that aliens who have procured entry into the United States by fraud within the meaning of § 241(f) and § 212(a)(19) will find it necessary to support themselves and in doing so will violate the labor certification requirement of § 212(a)(14). This does not, however, render § 212(a)(14) a lesser included offense in § 212(a)(19), or result in § 212(a)(14) violations being inextricably linked to § 212(a)(19) violations. It cannot be said that every case of fraud in the procurement of entry documents within § 212(a)(19) will also involve a violation of the § 212(a)(14) labor certification requirement. The labor certification requirement has entirely different policy underpinnings than § 212(a)(20). It is designed to protect the American labor market, while § 212(a)(20) is intended to protect the integrity of the visa–issuing process. *See Cacho v. Immigration and Naturalization Service, supra,* 547 F.2d at 1062. Mrs. Skelly's violation of § 212(a)(14) is a separate and independent basis for her deportation, not related to any potential charge of deportability for fraud under § 212(a)(19). In accord with *Cobian–Hernandez, David* and *Cacho*, this court should hold that § 241(f) cannot waive Mrs. Skelly's deportation charges based on § 212(a)(14).

## III.

Petitioner seeks to avoid the result clearly mandated by the *Cobian–Hernandez, David* and *Cacho* cases by attacking the validity of her original deportation order. In this attack she contends that at the time of her entry, she was validly married to Loren Presley, a U.S. citizen, and that as a result she was exempt from the labor certification requirement of § 212(a)(14). Petitioner contends that her subsequent annulment of the Presley marriage did not void the marriage *ab initio* under Oklahoma law, and that her marital status at the time of her entry precludes her deportation under § 212(a)(14). She continues that, if she is deportable at all, it is under the marital fraud section, § 241(c), but that § 241(c) is waived by § 241(f).

■ This argument is untenable. First, it is untimely. As noted, petitioner did not take an appeal from the original deportation order made by the immigration judge on March 18, 1976. Instead, she is attempting to assert the invalidity of her deportation charge for the first time here. She did not raise this issue in her motion to reopen the deportation proceedings. Her motion to reopen was narrowly addressed to the applicability of § 241(f) to her deportation charge under § 212(a)(14). She did not contest the validity of the charge. 8 C.F.R. § 242.22 provides that:

> A motion to reopen [deportation proceedings] will not be granted unless the special inquiry officer is satisfied that the evidence sought to be offered is material and was not available and could not have been discovered or presented at the hearing . . . ..

In the motion to reopen, petitioner did not present new evidence that would cast doubt upon the validity of her original deportation order. She is therefore precluded from challenging the grounds for her deportation at this late stage.

■ Petitioner's argument also fails on the merits. True, the labor certificate requirement of § 212(a)(14) is not applicable to special immigrants who are spouses of United States citizens. *See* § 212(a)(14), 8 U.S.C. § 1182(a)(14) (prior to 1976 amendments). And, for the sake of discussion, it is to be assumed that Mrs. Skelly was validly married under Oklahoma law at the time of her entry into the United States. *See Hunt v. Hunt,* 23 Okl. 490, 100 P. 541, 542 (1909). Nevertheless, the status of Mrs. Skelly's marriage under the federal immigration laws is not governed by state law. *See Lutwak v. United States,* 344 U.S. 604, 611, 73 S.Ct. 481, 486, 97 L.Ed. 593 (1953); *De Figueroa v. Immigration and Naturalization Service,* 501 F.2d 191, 195 (7th Cir. 1974).

> When an alien goes through a marriage ceremony without ever intending to enter into a *bona fide* marital relationship but solely to facilitate his receipt of a visa, the marriage for immigration purposes is deemed to have been fraudulent and invalid.

*Kokkinis v. District Director of Immigration and Naturalization Service,* 429 F.2d 938, 941 (2d Cir. 1970). The Congressional intent not to permit aliens to evade the immigration laws through sham marriages is evidenced by the presence of the marital fraud section, § 241(c) of the Immigration and Nationality Act:

> An alien shall be deported as having procured a visa or other documentation by fraud within the meaning of paragraph (19) of § [212(a), 8 U.S.C.] 1182(a) of this title, and to be in the United States in violation of this chapter within the meaning of subsection (a)(2) of this section, if (1) hereafter he or she obtains any entry into the United States with an immigrant visa or other documentation procured on the basis of a marriage entered into less than two years prior to such entry of the alien and which, within two years subsequent to any entry of the alien into the United States, shall be judicially annulled or terminated, unless such alien shall establish to the satisfaction of the Attorney

General that such marriage was not contracted for the purpose of evading any provisions of the immigration laws; . .

8 U.S.C. § 1251(c).

Petitioner was not charged under § 241(c), and thus § 241(c) does not apply directly to the instant case. It is worth noting, however, that Mrs. Skelly falls well within the two–year rule of § 241(c): she was married barely two months prior to her entry into the United States on September 29, 1975, and her marriage was judicially annulled a week later. Indeed, Mrs. Skelly concedes on this appeal that her marriage to Presley was fraudulent within § 241(c), and previously admitted to the immigration judge that she married Presley solely to obtain entry into the United States. This case does not present a factual issue concerning the existence or nonexistence of fraud. *Cf. Bark v. Immigration and Naturalization Service*, 511 F.2d 1200 (9th Cir. 1975) (remanding for evidence of the parties' intent at the time of their marriage). Regardless then of the status of the marriage under Oklahoma law, petitioner's marriage should be deemed invalid at the time of her entry into the United States under the immigration laws. Mrs. Skelly was not exempt from the requirement that she either secure a labor certificate, or refrain from working in the United States. The March 18, 1976 order of the immigration judge was correct on its merits: Mrs. Skelly was validly ordered deportable as excludable under § 212(a)(14).

As long as Mrs. Skelly's original deportation order is valid, it is unnecessary to consider the final argument that she was only deportable under § 241(c), and that § 241(c) deportation charges are waived by § 241(f).

## CONCLUSION

The decision of the Board of Immigration Appeals affirming the immigration judge's denial of Mrs. Skelly's motion to reopen her deportation proceedings in order to apply for a § 241(f) waiver of deportation is affirmed.